Mariner v. Dyer.

granted,—and because the thing reserved did not exist at the time of the grant.   And he cited *Noy's max.* 70.

The cause having been continued from the last term to this, for advisement, the opinion of the Court was now delivered by

————————

MARINER *v.* DYER, *in certiorari.*

Under the *Stat.* 1785, *ch.* 66, [*Stat.* 1821, *ch.* 72,] for the support and maintenance of bastard children, a bond is not necessary to give jurisdiction to the Court of Common Pleas, if the defendant appear, either in person, or by attorney.

And the Court may render a judgment of filiation upon default, the provision for a trial by jury being for the defendant's benefit, which he may waive.

An order on the putative father to pay a sum weekly *till the further order of Court,* is warranted by the statute.

So also is a judgment for costs, such having been the uniform practice under the statute.

The right to issue a *capias* is incident to the jurisdiction of the Court of Common Pleas, in all cases of contempt.

THIS was a *certiorari*, brought to quash the record of the Common Pleas, in a prosecution upon the bastardy act in which the present plaintiff was accused by *Almira Dyer* of being the

father of her illegitimate child. It appeared from the record sent up that *Mariner*, had been apprehended upon a Justice's warrant issued upon the complaint of *Almira Dyer*, and that he entered into a *recognizance* before the Justice, conditioned for his appearance at the Circuit Court of Common Pleas at *March* term, 1820, to answer to the complaint against him. At that term he appeared by his attorney who caused his name to be entered on the docket, and answered to the complaint then filed against him ; but the Court ordered a continuance of the *recognizance* to the next *June* term, at which *Mariner* again appeared by attorney, and *refused to plead*, and afterwards *made default.* The Court thereupon adjudged him *to be the reputed father of the child*, and that he stand charged with the maintenance of it with the assistance of the mother ; and for this purpose it was further ordered by the Court that he pay to the mother of the child three dollars per week from *March* 26, 1820, for ten weeks, and afterwards seventy-five cents per week *till the further order of Court ;* and that he pay the *costs of prosecution*, and give bond to the prosecutrix with sufficient surety or sureties in the penal sum of five hundred dollars to perform said order ; and also that he give bond to the inhabitants of *Cape Elizabeth* with sufficient sureties in the like sum, conditioned to indemnify them against the charge of maintaining the child ; and that he *stand committed* until he give said bonds.

This order not being complied with, and it appearing to the Court that *Mariner* had departed in contempt of its authority, a *capias* was thereupon awarded against him, returnable at *November* term, 1820, to which term the cause was continued.

At *November* term the *capias* being returned, it appeared that *Mariner* had been arrested and imprisoned, but that he had been discharged by *habeas corpus*, on giving bond with sureties for his appearance at that term to receive the sentence and judgment and abide the order of Court thereon ; which bond was returned with the *capias*. But being called to receive the sentence and order, he did not appear, but again made default.

*Daveis*, for the present plaintiff, took the following objections to the record.

The proceedings in this case being not according to the ... of the common law, but wholly by statute provisions, if

Mariner v. Dyer.

these are not strictly pursued, the whole is void. But the duty of the Justice as prescribed by the statute, is not to take a recognizance, but a *bond* for the defendant's appearance,—which not having been done, the proceedings are discontinued, and all the subsequent matter is void: *Smith v. Rice,* 11 *Mass.* 510. *Baxter v. Taber,* 4 *Mass.* 367. *Jones v. Hacker,* 5 *Mass.* 266; *Drowne v. Stimpson,* 2 *Mass.* 445. The Common Pleas could have no jurisdiction till a bond was taken. Nor is this cured by the appearance of the party;—for this doctrine applies only to those cases in which the proceedings are according to the course of the common law. Inferior Courts of special authority can have no jurisdiction conferred by appearance and confession of judgment. 3 *Caines* 129. *Coleman's cases* 470. And the statute requires *personal* appearance; for the bond is to have the effect of a recognizance, which is not saved by an appearance by attorney.

2. The Court, at *March* term 1820, did not require the security demanded by the statute. They continued the *recognizance*, when they should have required *bond.*

3. Here is an adjudication *upon default*, which the Court had no power by law to do. The whole doctrine of the common law on the subject goes to compel the personal appearance. It authorizes a fine, and attachment for contempt, and outlawry;—but does not authorize the entry of judgment *pro confesso. This* is founded wholly on the positive enactment of our statute, which is limited, by a fair construction, to proceedings by *writ*, for it speaks of appearance in person *or by attorney.* The recent extension of this authority to prosecutions under the bastardy-act of *Maine*, shews that it was not so under the old statute on which the present prosecution was founded. This stood upon the foundation of prosecutions by complaint for the removal of paupers, where the *evidence* is specially made part of the record;—or of libels for divorce, where no default or confession is admitted to supply the place of proof of the fact. The bond also, is to have the *effect of a recognizance*, upon forfeiture of which an action of debt lies, but the course is never to enter judgment *pro confesso.* The statute authorizes a judgment of filiation only upon *trial*, in which the woman is to be a *witness*. It must be upon *issue*, and *verdict*, without which the whole is *coram non judice* and void.

Mariner v. Dyer.

4. The *capias* was issued without law. The power to issue attachments for contempt does not belong to inferior Courts, of limited jurisdiction ; but only to superior Courts, *proceeding according to the course of the common law.* And this must be given by statute. 4 *Bl. Com.* 283. 2 *Hawk. P. C.* 272, 292. *Stat.* 9 & 10, *W.* 3, *ch.* 15. It cannot be taken by implication.

5. Nor had the Court power to adjudicate that the defendant should pay a fixed sum "till the further order of said Court ;"—for this may be substantially perpetual. 2 *Show.* 129.

6. Nor to award *costs.* These depend wholly on statute provisions ;—and the statute, in this case, gives none.

*Longfellow, è contra.*

The only material questions are—whether the Court of Common Pleas had jurisdiction,—1st, of the subject matter,—2d, of the person.

The *first* is expressly given by the statute.

As to the *second ;*—the proceedings before the Justice shew that the original defendant was apprehended, and brought before him, and ordered to appear at the next Court of Common Pleas to answer to the complaint. So far was legal, and it was his duty to appear. The error of the Justice in taking a *recognizance* instead of a *bond* for his appearance, does in no wise discharge him of that duty. And the end of such bond, had it been taken, is answered by the appearance by attorney. *That* was a submission to the jurisdiction because the Court had already jurisdiction of the subject matter. A personal appearance was not necessary, because this is not a criminal, but a civil process. And it is not the bond which gives jurisdiction in this case,—it is the law itself. Otherwise, if the party refuse to give bond, the Court cannot continue the process, but the whole will be defeated,—thus placing the remedy wholly in the power of the defendant. So if the bond taken by the Justice be insufficient, or if the defendant, having refused to give bond for his appearance, had been committed and were still in prison, can it be said that the jurisdiction of the Court is thereby taken away ? May he escape, leaving the injured party to a remedy merely nominal on a bad bond ? The course, it is believed, has always been otherwise. The Court proceeds to trial upon an

Mariner v. Dyer.

appearance by attorney, and renders judgment in the case. If the party, being present, refuse to perform their order, the Court may commit him;—and why not attach him, if absent? The proceedings, after the process comes into that Court, are all according to the course of the common law, as far as regards the pleadings, evidence, mode of trial, and judgment; and unless the Court can exert the common law powers of enforcing its judgments, all its proceedings must end in mere nullity. The party having once appeared and submitted to the jurisdiction, the Court has a right to proceed to final judgment;—and a departure in contempt is, by one of the most familiar rules of evidence, a silent admission of the accusation.

As to the costs—they are awarded, under the general statute, to the party finally prevailing. The order to pay " till the fur-" ther order of the Court" was consonant to the invariable usage under the statute, notwithstanding the obscure note in *Shower.* And with good reason, for if the order were for a definite period, it might well be doubted whether the Court could afterwards control it; but now it may be varied on application of either party, according to the justice of the case.

The cause having been continued under advisement from the argument at *November* term, 1821, to this time, the opinion of the Court was now delivered by

WESTON J. In the proceedings before the justice, the party accused *recognized* for his appearance before the next Circuit Court of Common Pleas, to answer to the complaint preferred against him; instead of giving *bond* according to the statute. At the next term of the Common Pleas he appeared by attorney to answer to the complaint, and also at the succeeding term; as appears by the record before us. It has been decided that a recognizance, taken in a proceeding of this sort, is inoperative and cannot be enforced against the recognizors. *Merrill v. Prince,* 7 *Mass.* 396. The justice should bind the party over to answer to the charge before the proper tribunal, by bond with sureties.

It is insisted that a bond was necessary to give jurisdiction to the Common Pleas. We cannot assent to the correctness of this position. If the authority of the Court to proceed depend-

ed upon the giving of the bond, their authority, as well as the right of the complainant to prosecute, might be defeated by the refusal or inability of the party charged to find the security required. The support of the infant, a portion of which, by the humane provisions of the law, is to be imposed upon the putative father, is an immediate charge, and it could never be intended or tolerated that the party accused should, by his obstinacy, suspend or delay, without good and sufficient cause, the investigation of the truth of the complaint preferred against him, upon which his liability is made to depend. A bond is required for the security of the complainant ; and the respondent having appeared, and made no objection to the regularity of the proceedings, he ought not now, in the opinion of the Court, to be permitted to assign, as an objection on his part to their validity, either the omission of the justice to take such bond, or of the Common Pleas to require a recognizance for his appearance at the second term. But we are not to be understood as intimating that these proceedings could have been sustained, had there been no appearance on the part of the respondent before the Court of Common Pleas, where the complaint was entered.

It is further urged that the Court could not legally adjudicate upon default, without the intervention of a jury. The statute prescribes, that certain preliminary steps being taken, which existed in this case, the respondent shall be adjudged the putative father of the child, unless from the pleas and proofs by him produced, and other circumstances, the jury shall be of opinion that he is not guilty. *Stat.* 1785, *ch.* 66. The interposition of the jury is provided for his benefit; and if the respondent in this case thought proper to forego the chance of an acquittal by them, of which he might have availed himself, he cannot at this time be received to object that the verdict of a jury was not taken which could only be necessary upon his denial of the charge, to pass upon the testimony by him exhibited, compared with that which the statute has made evidence in behalf of the complainant.

The course of proceeding, in certain of its prominent features, was regulated by the statute before cited; but in many particulars, where that was silent, it was necessarily governed by the common law and by the practice and usage of the Court, to

whose jurisdiction the subject matter was referred.   If the party accused denied the charge, and put himself upon the country for trial, the jury were to determine the question of his innocence or guilt.   If he pleaded guilty, the Court entered up judgment against him upon his own confession.   But if he wilfully and obstinately refused to answer, he could not thus elude the justice of the Court ; but they might proceed to adjudge him the putative father, if they found the preliminary proceedings and the evidence exhibited to be in accordance with the statute,

By the revised statutes, *ch.* 72, § 1, which passed since the judgment in the case before us was rendered in the Court below, the Court of Common Pleas are now authorized, in express terms, to adjudicate upon the confession or default of the party charged.

Another exception taken to the judgment in this case is, that the Common Pleas had no authority to direct that a certain sum should be paid weekly to the mother, *until the further order of Court ;* and a case is cited from 2 *Shower,* 129, where a similar order in a bastardy case was quashed upon this ground.   The case in *Shower* is very briefly reported ; but it would undoubtedly be an authority in point, provided the language of the English statute, under which the justices there acted, be found to be the same with that, under which the Common Pleas proceeded. The English statute, which is that of 18 *Elizabeth, ch.* 3, prescribes, as well for the punishment of the parents, as for the relief of the parish, that two justices, *quorum unus,* shall charge " the mother or reputed father with the payment of money " weekly, or other sustentation for the relief of such child, in " such wise as they shall think meet and convenient."   The language of our statute is, that " he shall be adjudged the re- " puted father of such child, notwithstanding his denial, and " stand charged with the maintenance thereof, with the assist- " ance of the mother, as the justices of the same Court shall " order."   It may be urged, that the principle of the case in *Shower* applies with equal force to cases arising under our own statute ; but we do not consider this point settled by the authority of that case, a different usage prevailing here, and the decision there being predicated upon a statute varying in its terms

from our own, and prescribing, not that a sum shall be paid by the reputed father to the mother to aid her in the support of the child, but that a weekly sum, to relieve the parish from the charge of its maintenance, shall be paid by the reputed father or by the mother.

Upon examination it has been found, that this form of adjudication, under our statute, has been extensively, if not uniformly, adopted. The party is to stand charged, " as the justices shall order." Their first order is necessarily predicated upon existing circumstances. By inserting therein the limitation, " until " the further order of Court," they reserve to themselves the power to order the weekly sum imposed to be increased or diminished, or to be altogether discontinued, as the equity of the case, having a due regard to the necessities of the child, and the situation of the parties, may from time to time require. We do not consider this reservation of the power to exercise a further discretion on their part, unreasonable or unwarrantable. It is impossible precisely to foresee the period, when the charge ought to cease. Much will depend upon the health and capacity of the child. It is not to be presumed that the Court will change or modify their order, without first giving due notice to the parties to be affected ; or that they will refuse to discontinue the charge, when the necessity, upon which it is founded, no longer exists.

The authority of the Court to award costs is controverted. This process is regarded as a civil remedy ; and for that reason depositions, which can be used only in civil causes, are received in prosecutions of this sort. Whether within the technical meaning of the statute which gives costs in all actions to the party prevailing, they could properly be allowed in this case, might admit of doubt ; but as they have in practice, so far as we have been able to ascertain, been uniformly awarded and acquiesced in, we do not feel warranted to disturb the proceedings upon this exception.

The last point taken is, that the Common Pleas transcended their powers in directing a *capias* against the accused, upon his avoidance. The right to order a *capias* is incident to their jurisdiction in all cases of contempt. They are expressly authorized by the statute to commit the party charged to prison,

until he find sureties to perform their order. If he avoid, a *capias* becomes essentially necessary to the due and proper exercise of this authority.

Upon full consideration the opinion of the Court is, that the judgment and proceedings of the Common Pleas ought to be affirmed.

*Note.*—The Chief Justice having formerly been of counsel for one of the parties, did not sit in this cause.