IN

# THE SUPREME CUORT

OF

## THE STATE OF MISSOURI,

SPECIAL SEPTEMBER TERM, 1865, AT ST. LOUIS.

————

JAMES S. THOMAS, Plaintiff, *v.* ANDREW W. MEAD AND JAMES C. MOODEY, Defendants.*

1. *Governor — Executive Power — Process.* — The Governor, representing the sovereign executive power in the State, is always virtually present in his courts for the purpose of executing the mandates and process of the courts, whenever the power of the marshal and an ordinary *posse* may not be sufficient for the purpose, or when the peace and dignity of the State may so require.

2. *Prohibition — Supreme Court.*—The Supreme Court has jurisdiction and power to issue a writ of prohibition; it is invested by the Constitution with a general superintending control over all inferior courts in the State, and with original jurisdiction to issue writs of *Habeas Corpus, Mandamus, Quo warranto, Certiorari,* and other original remedial writs, and to hear and determine the same. In respect of pre-eminence and power, it holds a position under the Constitution analagous to that of the King's Bench in England, and will keep all inferior jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined be

---

* On account of the public interest taken in this case, and the important principles involved, the proceedings are given at large. The opinion of Judge Moodey upon dismissing the original suit, is for the same reasons added in a note at the end of the case. Some comments upon the questions involved in the case will be found in 13 Amer. Law Reg., Oct. 1865, p. 705.

Thomas v. Mead et al.

fore it, or prohibit their progress by law. A "Prohibition" is an original remedial writ, and was provided by the Common Law as a remedy for encroachment of jurisdiction. It is directed to the judge and parties to a suit in an inferior jurisdiction, upon the ground that they have illegally assumed or transgressed the limits of their jurisdiction.

3. *Supreme Court—Constitution.*—It belongs peculiarly to the Supreme Court to put a final construction upon the Constitution and statute laws of the State.

4. *Evidence—Judicial Notice.*—Of the public and official acts of the sovereign political power in the State, or of the executive or judicial departments of the Government, the Circuit Courts are bound to take judicial notice.

At the special term, held in September, A. D. 1865, the plaintiff filed the following petition:

James S. Thomas, plaintiff, *v.* Andrew W. Mead and James C. Moodey, defendants.—In the Supreme Court of the State of Missouri.—Special Term, Saturday, September 23, 1865.

Now at this day comes James S. Thomas and states to the court here, that on or about the 13th day of June, 1865, one Andrew W. Mead filed in the office of the Clerk of the Circuit Court of St. Louis county, a petition in the nature of a petition for injunction against this petitioner and others, wherein and whereby the said St. Louis Circuit Court was prayed that the defendants in said petition named might be enjoined, restrained and prohibited against touching, handling, seizing, taking, or carrying away any of the records, books and papers of this honorable court, and the seal of said court, without the consent of him, the said Andrew W. Mead. And this petitioner further shows that on the said last named day, the Honorable James C. Moodey, Judge of the said Circuit Court of said county, on the motion of the said Andrew W. Mead, and on hearing and considering the matters stated in said petition, made an order in the nature of a restraining order, whereby the petitioner and the other defendants named in said petition were enjoined, prohibited and restrained according to the prayer of the said petitioner. And the said petitioner further shows that afterwards, towit, on the 17th day of said month, in term of the said Circuit Court, upon affidavit of the said Andrew W. Mead, made and filed in said cause, alleging that the said defendants and other parties named in said affidavit had been guilty of disobeying and violating said injunction, issued an order directed to him and to the parties named in said petition and

Thomas v. Mead et al.

affidavit, to show cause why an attachment should not issue against them for contempt in disobeying and violating the said injunction, and said parties were required to appear in said court on the first day of the then next term of said court to answer the said alleged contempt. And the petitioner suggests that all the proceedings aforesaid are in contempt 'of the State of Missouri and against the Constitution and laws thereof, and to the manifest damage, prejudice and grievance of him the said petitioner; that, by the Constitution and nature of this court, this court is itself, and of necessity must be, the sole and exclusive tribunal to determine who, by the law of the land, is the proper custodian of the records, books and papers of this court, and the seal thereof, and that if the petitioner and other parties named in the said petition and affidavit are guilty, or have been in anywise guilty of, or have conspired to seize, take, and carry away the records, books and papers, and seal of this court, that this court hath full jurisdiction to prevent and restrain the same by proper order, process and decree; and that neither the Circuit Court of St. Louis county and no other inferior tribunal hath, by law, right or authority to determine who is entitled to the custody of the books, records, papers and seal belonging and pertaining to this honorable court. That the proceedings instituted and followed as aforesaid are a direct encroachment upon the authority and, jurisdiction of this court, and are in contempt of this honorable court, its authority and dignity, and that under the Constitution and the laws it is made the care of this court that the said Circuit Court, as well as all other inferior courts, keep within the bounds and limits of the several jurisdictions prescribed to them by the laws and statutes of the State: Wherefore, your petitioner prays the remedy of the People's writ of Prohibition to the said Andrew W. Mead, and to the said James C. Moodey, to be directed to prohibit them from pursuing and holding the pleas aforesaid, the premises aforesaid anywise concerning farther before the said Circuit Court. And the said petitioner herewith exhibits to this court an exemplification, under the seal of the said Circuit Court and hand of the clerk thereof, of the record and proceedings had in the said court in the said cause in establishment of the matters stated in his petition.

By HENRY A. CLOVER, Attorney.
R. M. FIELD, SAMUEL KNOX,
of Counsel.

Thomas v. Mead et al.

Andrew W. Mead, plaintiff, *v.* David Wagner, Walter L. Lovelace, E. H. E. Jamieson, Ferdinand Meier, Nathaniel Clark, James S. Thomas, Bernard Laibold, A. R. Bowman, and John C. Vogel, defendants.—In the St. Louis Circuit Court, September Term, 1865.

The plaintiff, Andrew W. Mead, states that for a long time he has been and now is the Clerk of the Supreme Court of the State of Missouri.

That as such clerk he is lawfully entitled to the custody of all books, records and papers belonging to said court, and to the business and jurisdiction and authority thereof as well as the seal of said court. That said books, records and papers are of inestimable value to the State and the people of Missouri, and to many persons beyond the limits of the State.

That said books, records and papers contain the evidence of rights and titles to every species of property, and have been intended by the laws to be perpetually preserved for the public good.

That it is the duty of the plaintiff to preserve and maintain inviolate all said books, records and papers, and seal, and that no lawful authority exists in any person or persons to disturb his possession or control of the same while he remains clerk of said court.

That he has been informed and believes and verily fears that the defendants have conspired together to seize and carry away from him and from his possession all said records, books and papers, and seal ; he says the defendants Wagner and Lovelace, as he has been informed and believes, have advised the defendant Bowman to set up some right to the possession and control thereof, though in fact said Bowman has no such power, authority or right; that the defendants Clark, Jamieson, Thomas, and Meier, as he verily believes, have been solicited to aid in the unlawful seizure and taking away from him said records, books, seal and papers, and he believes that they have colluded and conspired with the other defendants to effect said seizure and dispossession, and he verily believes and fears that the defendants are about forcibly to seize and take and carry away unlawfully from him and from his possession and control the said books, records and papers, and the seal of the said court, and that they will do so unless restrained and enjoined therefrom by the order of this court. The plaintiff states that the said records, books, papers, and seal of court, are so important to the public interests, they have not that peculiar value which

can be estimated in damages, and that it is not the matter of damages to be recovered from the wrong-doers in such case to which he is advised he should look for redress, but that his duty is to prevent the intended wrong.

And now, therefore, and forasmuch as there is no remedy adequate in the premises save injunction, he prays that said defendants and each of them, and all others though not specially mentioned by name herein, may be enjoined, restrained and prohibited against touching, handling, seizing, taking, or carrying away any of said records, books and papers, and seal of court, without consent of the plaintiff; and that the court will grant to the plaintiff such other and further relief as may be right and proper in the premises, &c.

GLOVER & SHEPLEY, for Plaintiff,
With whom are
SHARP & BROADHEAD, and THOS. T. GANTT.

On the giving of bond, the following writ of injunction was issued:

The State of Missouri to David Wagner, Walter L. Lovelace, E. H. E. Jamieson, Ferdinand Meier, Nathaniel Clark, James S. Thomas, Bernard Laibold, A. R. Bowman and John C. Vogel, and all other persons combining or confederating with them. You and all persons combining or confederating with you, are hereby enjoined, prohibited and restrained against seizing, taking or carrying away, handling, or in any manner meddling with any of the books, records or papers of the Supreme Court of Missouri, or the seal of said court, now in the possession or control of Andrew W. Mead, Esq., clerk of said court, without the permission or consent of said Mead; and herein you will fail not, until the further order of the Circuit Court of St. Louis county.

And on the same day a writ of summons was issued to the parties made defendants.

On the 17th July, 1865, the following affidavit was filed:

Andrew W. Mead v. David Wagner et als.—In Circuit Court, St. Louis county, Mo.

The plaintiff, Andrew W. Mead, states that on the 13th June, 1865, the injunction prayed for in this cause issued. That after the same was served on David Wagner, Walter L. Lovelace, Nathaniel Clark, Ferdinand Meier, and James S. Thomas, they, said Wagner, Lovelace, Meyer, Clark and

Thomas v. Mead et al.

Thomas, colluding and conspiring with the other persons hereinafter mentioned—to wit, on the 14th June, 1865—did violate and disobey said injunction by seizing, taking and carrying away illegally and forcibly the books, records and papers, and seal therein mentioned, without permission or consent of affiant; and after full notice of existence of said injunction; and the service thereof had come to the knowledge of R. M. Field, Henry A. Clover, Samuel Knox, E. H. E. Jamieson, Thomas C. Fletcher, and D. C. Coleman, the said Field, Clover, Knox, Jamison, Fletcher, and Coleman, on day and year last aforesaid, confederating and colluding with the persons first mentioned, did disobey and violate said injunction by counselling and advising the same, and aiding and abetting the violation thereof; and said Fletcher and Coleman did by force and arms disobey and violate the same as aforesaid; and further affiant saith not.

The plaintiff, Andrew W. Mead, on his oath states, he believes the statement in the above and foregoing to be true as therein set forth.                        A. W. MEAD.

Sworn to before me this 17th day of July, 1865.
                        F. A. H. SCHNEIDER, Clerk.

And on the same day and at the same term, the following order was made herein:

Andrew W. Mead *v.* David Wagner *et als.*

Now, at this day comes the plaintiff by his attorneys, and files an affidavit, from which it appears that David Wagner, Walter L. Lovelace, Nathaniel Clark, Ferdinand Meier, Jas. S. Thomas, R. M. Field, Henry A. Clover, Samuel Knox, E. H. E. Jamieson, Thomas A. Fletcher, and D. C. Coleman, did disobey and violate the injunction heretofore issued herein on the 13th day of June, A. D. 1865. It is therefore ordered by the court, that a summons issue to David Wagner, Walter L. Lovelace, Nathaniel Clark, Ferdinand Meier, James S. Thomas, R. M. Field, Henry A. Clover, Samuel Knox, E. H. E. Jamieson, Thomas C. Fletcher, and D. C. Coleman, commanding them to appear in this court on the first day of the next term thereof, and show cause why an attachment should not issue against them for contempt, in disobeying and violating the injunction heretofore issued on the thirteenth day of June, eighteen hundred and sixty-five, in the above entitled cause.

16—VOL. XXXVI.

On motion of plaintiff, it is ordered by the court that this suit be dismissed as to John C. Vogel.

Upon the papers filed by the plaintiff, and upon his suggestion, the Supreme Court awarded the following rule to show cause:

September 23, 1865.—Now, at this day comes James S. Thomas, by his attorney, and files his motion for a writ of prohibition to be directed to Andrew W. Mead and James C. Moodey, Judge of the Circuit Court of St. Louis county, to prohibit them from further pursuing and holding cognizance of certain pleas in a certain cause, being a petition for an injunction pending in said court, wherein the said Andrew W. Mead is plaintiff, and the said James S. Thomas and others are defendants; and on reading the record of the proceedings of said suit, and considering said motion, it is ordered by the court that the said parties, Andrew W. Mead and James C. Moodey, appear in this court on Monday the 25th day of September, instant, at 10 o'clock A. M., and show cause, if any they have, why the said writ of prohibition should not issue as prayed for, and that in the meanwhile all further proceedings in said court in said cause be stayed until the further order of this court.

Judge Moodey did not appear to answer the rule.

*Clover, Field & Knox,* and *Sharp, Broadhead* and *Gantt,* for plaintiff.

*Glover & Shepley,* for defendants.

HOLMES, Judge, delivered the opinion of the court.

Upon the suggestion of the plaintiff, which is filed in this court, accompanied with an exemplification of the petition and proceedings in a certain cause pending in the St. Louis Circuit Court, wherein the said defendant Andrew W. Mead was plaintiff and the said James S. Thomas was one of the defendants, a rule was granted and served upon the defendants herein, requiring them to appear and show cause why the writ of prohibition should not issue to prohibit them from any further proceeding in said cause in the court below. The defendants having failed to appear and show cause

Thomas v. Mead et al.

as required, the plaintiff now asks that the rule be made absolute.

The suggestion states the substance of the petition and proceedings in said cause, and suggests "that all the proceedings aforesaid are in contempt of the State of Missouri, and against the Constitution and laws thereof, and to the manifest damage, prejudice and grievance of him, the said petitioner; that by the constitution and nature of this court, this court is itself and of necessity must be the sole and exclusive tribunal to determine who, by the law of the land, is the proper custodian of the records, books and papers of this court, and the seal thereof; and that if the petitioner and other parties named in the said petition and affidavit are guilty, or have been in any way guilty of, or have conspired to seize, take, and carry away the records, books, papers and seal of this court, that this court hath full jurisdiction to prevent and restrain the same by proper order, process and decree, and that neither the Circuit Court of St. Louis county, nor any other inferior tribunal, hath by law, right or authority to determine who is entitled to the custody of the books, records, papers, and seal, belonging and pertaining to this honorable court. That the proceedings, instituted and followed as aforesaid, are a direct encroachment upon the authority and jurisdiction of this court, and are in contempt of this honorable court, its authority and dignity, and that under the Constitution and the laws it is made the care of this court that the said Circuit Court, as well as all other inferior courts, keep within the bounds and limits of the several jurisdictions prescribed to them by the laws and statutes of the State." And it prays for a writ of prohibition to issue against said defendants to prohibit them from pursuing and holding the pleas aforesaid further before said Circuit Court.

It appears by the exemplification that on the 13th day of June, 1865, the said Andrew W. Mead, as plaintiff, filed his petition in the St. Louis Circuit Court in the nature of a bill in equity for an injunction against David Wagner, Walter

L. Lovelace, E. H. E. Jamieson, Ferdinand Meier, Nathaniel Clark, James S. Thomas, Bernard Laibold, A. R. Bowman, and John C. Vogel, defendants therein. The petition states that the plaintiff was the Clerk of 'the Supreme Court, and as such "lawfully entitled to the custody of all books, records and papers belonging to said court, and to the business and jurisdiction and authority thereof as well as the seal of said court;" that said books, records and papers were of inestimable value to the State and to many persons beyond the limits of the State ; that it was the duty of the petitioner to preserve the same for the public good, and that "no lawful authority existed in any person or persons to disturb his possession or control of the same while he remains clerk of said court." It further states " that he has been informed and believes and verily fears that the defendants have conspired together to seize and carry away from him and from his possession all said records, books and papers, and seal." He says " the defendants Wagner and Lovelace, as he has been informed and believes, have advised the defendant Bowman to set up some right to the possession and control thereof; that, in fact, said Bowman has no such power, authority. or right; that the defendants Clark, Jamieson, Thomas, and Meier, as he verily believes, have been solicited to aid in the unlawful seizure and taking away from him said records, books, seal, and papers ; and he believes that they have colluded and conspired with the other defendants to effect. said seizure and dispossession, and he verily believes and fears that the defendants are about forcibly to seize, and take, and carry away unlawfully from him and his possession and control the said books, records and papers, and seal of said court, and that they will do so unless restrained and enjoined therefrom by the order of this court." The plaintiff states that the said records, books and papers, and seal of court, are so important to the public interests, they have not that peculiar value which can be estimated in damages to be recovered from the wrong-doers in such case to which he is advised he should look for redress, but that his duty is to

prevent the wrong." And it concludes with a prayer for an injunction.

It further appears by the copy of the record, that the injunction was granted as prayed, and that afterwards on the 17th day of July, 1865, the said Andrew W. Mead filed an affidavit in said court which reads as follows:

"The plaintiff, Andrew W. Mead, states that on the 13th June, 1865, the injunction prayed for in this cause issued. That after the same was served on David Wagner, Walter L. Lovelace, Nathaniel Clark, Ferdinand Meier, and James S. Thomas, they saw Wagner, Lovelace, Meier, Clark, and Thomas, colluding and conspiring with the other persons hereinafter mentioned, to wit, on the 14th June, 1865, did violate and disobey said injunction by seizing, taking and carrying away, illegally and forcibly, the books, records and papers, and seal therein mentioned, without permission or consent of affiant, and after full notice of existence of said injunction and the service thereof had come to the knowledge of R. M. Field, Henry A. Clover, Samuel Knox, E. H. E. Jamieson, Thomas C. Fletcher, and D. C. Coleman; that said Field, Clover, Knox, Jamieson, Fletcher, and Coleman, on day and year last aforesaid, confederating and colluding with the persons first mentioned, did disobey and violate said injunction by counselling and advising the same, and aiding and abetting the violation thereof, and said Fletcher and Coleman did, by force and arms, disobey and violate the same as aforesaid, and further affiant saith not."

Whereupon the court ordered that a summons issue to the persons named in the affidavit, commanding them to appear and show cause, on the first day of the next term of the court, why an attachment should not issue against them for contempt in disobeying and violating the said injunction.

The matter is to be determined here as it is presented by the suggestion and on the face of the petition and proceedings in the court below, but it will be proper to notice also certain things which the defendants were bound to know without their being expressly stated in the petition.

By an ordinance of the people of the State of Missouri in Convention assembled, adopted in Convention on the seventeeth day of March, 1865, certain civil offices of this State, and among them the offices of the judges and clerks of the Supreme and Circuit Courts, were absolutely vacated on the first day of May, 1865; and it was therein ordained that the vacated offices should be filled for the remainder of the respective terms thereof by appointment of the Governor. In virtue of this ordinance, and before the filing of said petition in the St. Louis Circuit Court, the Governor of the State, as in duty bound, officially recognizing the action of the sovereign political power in the State, and as head of the Executive Department of the Government, proceeding to carry into effect and operation the changes which had been made in the Constitution of the State by the sovereign people in Convention assembled, had filled by appointment many of the vacated civil offices, and among the rest had appointed and commissioned the honorable David Wagner, and the honorable Walter L. Lovelace, to be judges of the Supreme Court; the honorable James C. Moodey to be judge of the Eighth Judicial Circuit, and Andrew W. Mead to be clerk of the Supreme Court; and when said petition was filed, they had duly qualified and were each and all acting as such civil officers. On the 27th day of May, a special term of the Supreme Court was called by public notice in pursuance of law, to be holden at St. Louis on the twelfth day of June, 1865, and on that day the Supreme Court was in session. On the fourteenth day of June, thereafter, the Governor of the State, by executive and official orders, dispossessed certain usurpers and placed the Supreme Court in possession and control of the court-room, clerk's office, and the records, books, papers and seal of the court, and the court proceeded in the discharge of its public and official duties. All these were public and official acts of the sovereign political power in the State, or of the Executive and Judicial departments of the State Government, which the said Andrew W. Mead, as clerk of the Supreme Court, was

bound to know and observe, and of which the judge of the St. Louis Circuit Court was bound by the law of the land to take judicial notice. (Luther v. Borden, 7 How., U. S., 39; 1 Greenl. Ev. § 6.)

On the meeting of the Supreme Court at the special term aforesaid, on the twelfth day of June, the said Andrew W. Mead failed to appear in court with the records, books and papers thereof as his official duty required him to do, and positively refused obedience to the orders of the court, and was notoriously resisting and defying its power and authority. This fact was sufficiently disclosed on the very face of his petition; and this conduct was not only a contempt of the Supreme Court, but a high misdemeanor in office by the statute, for which he was liable to immediate suspension from office and to a final trial before this court upon charges to be exhibited by the Attorney General on notice from the judges. (R. C. 1855, p. 334.)

The books, records, papers, and seal of the court, are public property of the State, and belong to the court. The clerk is merely the official keeper of them for the use of the court and the public. He is entitled to the possession of them for this purpose, and for the care and preservation of them, as against other persons having no authority or right to control them; but the books, records, and seal, are always to be under the immediate power, direction and control of the court itself, no less than the clerk himself. And no other court has any power or jurisdiction over them as such. This results from the very nature and constitution of the court, and is in accordance with general principles of law; and the statute regulating clerks, proceeding upon these principles, expressly declares that the clerk must keep his office at such place as the court shall direct, and there keep the records, papers, seal and property belonging to his office, and there transact his official business. His accounts of expenditure for their care and preservation are to be audited by the court; he cannot remove them without the order of the court, except in case of danger from an invading enemy;

he must be ready at all times to deliver them over to his successor, or to the temporary clerk appointed to receive them, in case of his suspension from office; he is responsible to the court for the official conduct of himself and his deputies; and, if he be guilty of failure of duty or any misdemeanor in office, he is liable to suspension and trial by this court. (R. C. 1855, p. 337.) This court has power by mandamus to compel a clerk who is removed, or whose office is vacated, or any other person, to deliver up the books, records and seal of any court in the State to his successor in office, (1 Chit. Gen. Pr., 292; Tapp. Mand. 99; Rex v. Hopkins, 4 Per. & D. 551,) and much more to control the records, books and seal of the court itself. Here, we have the extraordinary spectacle of a clerk of the court undertaking to ignore and defy the power and authority of the court over its own records, as well as its power and control over him in the discharge of his official duties; and, in addition to all this, he has the presumption while the court is in session, in term time, to file a petition for an injunction in the St. Louis Circuit Court, to restrain the Supreme Court from meddling with their own records, and even to include therein the executive authorities of the State also, by whom the mandates and process of the court are necessarily to be executed, whenever the power of the marshal and an ordinary *posse* may not be sufficient for the purpose, or when the peace and dignity of the State may so require; for the Governor, representing the sovereign executive power in the State, is always virtually present in his courts for that purpose.

This petition and affidavit exhibit the unparalleled effrontery of describing the highest functionaries of the State government, executive and judicial, as merely private and unofficial persons, and treating their official acts as an unlawful conspiracy to dispossess the petitioner of the records, books and seal of the court, to which he had himself by acts of misdemeanor in office ceased to have any right of possession whatever. And when it is considered that the Circuit Court was bound by the law of the land to take judicial no-

Thomas v. Mead et al.

tice of the official character of these persons, and was ena-
bled to see by the face of the petition and affidavit that the
acts complained of were done in their official capacities and
by virtue of their constitutional and lawful powers, the action
of that court in entertaining such a petition, granting an in-
junction so unprecedented and even proceeding to summon
the Governor of the State, and two of the judges of this
court, to answer for a feigned contempt in disregarding the
restraining order, as they were in duty bound to do in the
necessary and proper discharge of their own official func-
tions and duties, might well excite the amazement of all
right-thinking persons.  There was not the shadow of an
equity in the petition, properly considered, on which to
ground an injunction at all.  It is unnecessary to deny that,
in certain cases, an injunction may be granted, mainly on
the ground that an immediate and irreparable injury is
threatened to be done; for which otherwise there would be
no adequate and complete redress; and if a stranger, with-
out right or authority, were unlawfully interfering with the
rightful possession by the clerk of the records, books and
papers of his office (especially if the court itself were not in
session), it is very probable that such a case might arise as
would give the Circuit Court jurisdiction to interpose by in-
junction against such person.  But, plainly, on the face of
this petition, this was no such case, but only a transparent
pretence of such a case.  It cannot justly be considered
otherwise than as a sheer abuse of the process of injunction.
Nor was the petitioner without other adequate remedy at
law; for if any unlawful person had got possession of the
records, books and papers, he could have applied to the Su-
preme Court itself, which was then in session, and obtained
a *mandamus* for the immediate re-delivery of them, and the
officer of the court could have summoned to his aid the
whole power of the State, if it had been necessary for the
execution of the process.  If this were all, and it were sim-
ply a case of error in a matter over which the Circuit Court
had full jurisdiction, there might be no ground for a prohi-

bition, and the case might have to be left to take the ordi-
nary course for correction of errors, by appeal, or writ of
error. But this is not all. It is manifest that the petition
and proceedings, on their face, seek to reach by injunction
a subject matter over which the Circuit Court has no juris-
diction by injunction or otherwise, namely, the control of
this court over its own records, books and papers, and seal,
and to disorganize and depose the court itself, by making a
majority of the judges parties to a feigned cause in which
they could not sit on appeal or writ of error, and by effect-
ually depriving the court of the means and power of per-
forming its functions. Such a proceeding, if not to be sum-
marily treated as a high-handed contempt of the authority
and dignity of the court, is certainly an unprecedented and
altogether unwarrantable encroachment upon the proper
jurisdiction of the Supreme Court. In this respect, we think
the proceedings in the court below clearly transgress and ex-
ceed the bounds and limits of the proper jurisdiction of the
Circuit Court; and the matter sufficiently appears on the
face of the petition and proceedings as well as by the sug-
gestion, which is neither answered nor denied.

That this court has original jurisdiction to issue the writ
of prohibition can scarcely be questioned. The Supreme
Court is invested by the Constitution with a general super-
intending control over all inferior courts of law in the State,
and with original jurisdiction and power "to issue writs of
*habeas corpus, mandamus, quo warranto, certiorari,* and all
other original remedial writs, and to hear and determine the
same. (Const., Art. VI., § 3.) In respect of pre-eminence
and power under the Constitution, it holds a position anala-
gous to that of the court of King's Bench in England, which,
says Blackstone, is a court of "very high and transcendent
jurisdiction," and is "the Supreme Court of common law
in the kingdom." Still more, this court is the final court
of errors and appeals in the State. Like the court of King's
Bench, it will "keep all inferior jurisdictions within the
bounds of their authority, and may either remove their pro-

ceedings to be determined here, or prohibit their progress below." (3 Black. Com. 41.) A prohibition is an original remedial writ, and it is old as the common law. It was the king's prerogative writ, provided by the common law as a remedy for "encroachment of jurisdiction." (3 Black. Com. 112.) It is, as it were, the counterpart of *mandamus*, which is in its nature affirmative, commanding certain things to be done; *prohibition* is negative in character, forbidding to be done certain things which ought not to be done: and though not expressly enumerated in the Constitution, it clearly comes within the words "*other original remedial writs.*" It is directed to the judge and parties to a suit in any inferior court, and commands them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, or that, in handling matters clearly within their jurisdiction, they transgress the bounds prescribed by the law of the land. (3 Black. Com. 112.) Says Justice Coke, from the King's Bench : " We, here in this court, may prohibit any court whatever, if they transgress and exceed their jurisdiction. And there is not any court in Westminster Hall but may be by us here prohibited, if they do exceed their jurisdictions, and all this is clear and without any question." (Warner v. Sucterman, 3 Bulst. 119.) One great object of the writ is to prevent conflicts between different courts, and a determination of the law in different ways by different courts; "an impropriety," says Blackstone, "which no wise government can or ought to endure, and which is therefore a ground of prohibition." (3 Black. 113.) It is granted at the instance of any one of the parties to the suit below, plaintiff or defendant, and even by a stranger (2 Inst. 602; 6 Com. Dig. 105) ; and because they deal in that which does not appertain to the jurisdiction of the court. (2 Inst. 607.) Indeed, the authorities are endless, and place the subject beyond all dispute. (2 Sel. 308; 6 Com. Dig. 105, 140 ; 6 Bac. Abr. 579, 600 ; Full v. Hutchins, Cowp. 424 ; Buggin v. Bennett, 4 Burr. 2035.)

It might be supposed that the court below proceeded upon a construction of the Constitution, ordinances, or statutes of the State, different from that which is here put upon them, and that, having jurisdiction to construe them when brought before the court, any errors committed might be corrected by appeal or writ of error. Indeed, it would seem almost necessarily to be inferred that the court did so proceed, in fact, or that it ignored them altogether. Both defendants appear to have assumed, wilfully, or by mistake of the law, that the ordinance vacating civil offices was null and void; that they were at liberty to disregard it, and that the public officers appointed under it, as well as the Governor in enforcing it, were acting without legal authority; otherwise, this petition and affidavit would have to be considered as, for the most part, a tissue of wilful and deliberate falsehoods, and it would be scarcely conceivable that any sane man could have sworn to them, or that the court could have ventured to act upon them as true. In general, the authorities seem to show, that, in order to justify a prohibition on the sole ground of a misconstruction of statutes, the statute must be pleaded, or the facts stated in such manner as to bring the statute directly in question, and it must distinctly appear that the court below is proceeding upon such misconstruction. It is unnecessary for the decision of this case that we should determine this point here; but if it did sufficiently appear, a prohibition would go on that ground also. It belongs peculiarly to the Supreme Court to put a final construction upon the Constitution and the statute laws of the State, and indeed upon the common law also recognized in this State. In like manner, the superior courts of law in England assume the determination of the construction of the acts of Parliament; and they prohibit all inferior courts from proceeding upon any construction different from that which is put upon them by superior courts. If an inferior court misinterprets a statute, that is held to be a proceeding contrary to the statute; and when courts of peculiar jurisdiction, as the Ecclesiastical or Admiralty courts, which pro-

Thomas v. Mead et al.

ceed in general according to the civil law, bring in question the statutes or common law of the realm, they are required to interpret, construe, and expound them, as they are expounded by the superior courts of common law, or as those courts shall say they ought to be expounded, when brought before them in prohibition. (Home v. Carnden, 2 H. Bl. 533.) For the law is not to be interpreted and decided in two different ways under the same government. If this were to be allowed, or if there were no power in the Supreme Court to interfere by prohibition in the exercise of its original jurisdiction, and that superintending control, which is given by the Constitution, the inferior courts might be brought into unseemly conflicts with one another or with this court, and we might have to witness the disorderly and disgraceful spectacle of the officers of different courts, armed with contradictory process, meeting in direct collision in the public streets, and inaugurating riot and civil disturbance, while purporting to be acting in the name of one and the same executive authority. Certainly, such things can never be permitted in any well ordered government. It was held in Gould v. Gapper, (5 East. 345,) in an elaborate decision by Lord Ellenborough, that the court of King's Bench would prohibit the spiritual courts, or any inferior court, from proceeding upon a construction of an act of Parliament different from that which was put upon it by that court, notwithstanding there was a remedy by appeal or writ of error ; not that the inferior court might not have jurisdiction to construe it, but " that the mischiefs of misconstruction were to be prevented by prohibition ;" and there can be little doubt that this court has like power and jurisdiction in similar cases.

We have found no instance reported of the exercise of this jurisdiction in prohibition hitherto in this State; but it is not without precedent in several other States of the Union. In Glover v. Simmons, (4 McCord, 67,) the jurisdiction is recognized as at common law; and in Grier v. Taylor, (4 McCord, 206,) may be found an able exposition of the appli-

cation, use and limitations of this writ under governments constituted like ours. It is rather to be considered as creditable to the ability and fidelity of the judges of the inferior courts of the State, that, for so long a period, no occasion has hitherto arisen which called for the interposition of this court by prohibition to keep them within the bounds of their lawful powers and jurisdictions; but in a case like this, without example in the history of the State, involving matters of the highest moment in the government, important for the honor and dignity of the judiciary, and essential to the peace and order of society, and in which the law is clear and the jurisdiction certain, we cannot hesitate to make the first precedent. Nothing can be of greater importance to the State and people, than that all courts should be kept in due line of order and authentic place in the administration of justice.

Rule made absolute. Judge Lovelace concurs. Judge Wagner not sitting.

NOTE.—The following opinion was given by Judge Moodey upon dismissing the case:

ST. LOUIS CIRCUIT COURT, September Term, 1865.

In the case of Mead v. Thomas, &c.—Injunction—*Ex parte* Wagner, &c., for contempt,—the following order will be entered:

The Supreme Court having issued its mandate prohibiting this court from proceeding any farther in either of said cases, it is ordered that the same be dismissed; that said Andrew W. Mead pay the costs of the suit first named, and that said Wagner, &c., go hence unpunished for their contempt of this court in disobeying its order of injunction in case of Mead v. Thomas.

Gentlemen of the Bar:—It is no new thing for a court, while obeying the order of a tribunal higher in authority, to give its own opinion as to the law. This was done by that model jurist Judge McLean in Bronson v. Kinsey, and it has been often done in your hearing by one of the ablest of my predecessors on this bench. I therefore, even in these lawless times, venture to do so.

On June 13, 1865, Andrew W. Mead presented his petition to the judge of this court, at the Law Library in front of the open door of the Supreme Court-room, stating that he was the clerk of the Supreme Court at St. Louis, and in possession of its records, papers, and seal; that James S. Thomas, David Wagner, Walter L. Lovelace, E. H. E. Jamieson, Ferdinand Meyer, Nathaniel Clark, Bernard Laibold, R. H. Bowman and John C. Vogel were about to take said records, papers and seal from him by force, and praying an injunction to restrain them from so doing. On this petition and an approved bond, an injunction was issued to restrain and prevent the act complained of.

Thomas v. Mead et al.

At that time, within my view, the Supreme Court of Missouri was in session in the Supreme Court-room; Judges Dryden and Bay were on the bench in the discharge of their duties of judges, at least under color of right. Of this fact I was bound to take judicial notice. It was not my province to determine the right of Judges Dryden and Bay so to do, no more than it was my right or duty to determine now the right of those who, in fact, occupy the same bench, until the question comes before me in some way known to the law. It was not my duty to search all the obscure corners of this immense building to see if any rival tribunal were sitting there. If such was the fact, I, for one, never knew it until three days ago.

In the case of Conrad v. Bernoudy, this court had decided that the tenure of office of those previously elected by the people was not affected by the Vacating Ordinance of the State Convention. That case was appealed to the Supreme Court for decision there. Its decision, then, under the peaceful forms of law, would have saved Missouri many years of strife and perhaps much bloodshed. I had then no judicial knowledge of the claims of any other person or persons to seats on the Supreme bench, except those of the old incumbents, Dryden and Bay. On July 17, 1865, an affidavit was presented to this court by the counsel of said Mead, stating that on June 14, 1865, a portion of the defendants in said injunction case, and others named in said affidavit—a portion of whom had been served with copies of the injunction, and the rest knowing of its existence—had, in violation of it, taken said records, &c., out of his custody by force.

The records of the Supreme Court show these facts, viz: On Monday, the 12th, and Tuesday, the 13th of June, 1865, the court sat at St. Louis: Judges Dryden and Bay on the bench, and Mead acting as clerk. On the 13th they adjourned to Wednesday, the 14th, at 10 o'clock. At that date, the affidavit of Mead and the history of the times show how the court was broken up, the judges arrested, and the records and seal taken by force from Mead, their only lawful custodian. Since then said record has been made to show that on June 12th another court sat somewhere, composed of Wagner and Lovelace; that A. R. Bowman was appointed clerk; that it adjourned to June 13th, on which day, "there being no business before the court," it again adjourned to June 14th. On that day it is made to appear that the court met, and then, for the first time after the lawless acts complained of in Mead's affidavit, the Judges Wagner and Lovelace produced their commissions. If they had kept their commissions securely in their pockets all the day, June 13th, on which the injunction was issued, I cannot see how this or any other court was bound to know judicially of their existence; and if I had known of it then, after the decision I had made in Conrad v. Bernoudy, which was appealed and still pending, I would not have recognized them while Dryden and Bay sat on the bench. On hearing Mead's affidavit, a summons was ordered to the parties named therein—to-wit: David Wagner, Walter L. Lovelace, Nathaniel Clark, Ferdinand Meyer, James S. Thomas, R. M. Field, Henry A. Clover, Samuel Knox, E. H. E. Jamieson, Thomas C. Fletcher, and David Coleman—to appear on September 25, 1865, and show cause why they and each of them should not be attached for contempt. This summons was, I believe served on all of them. At the time of issuing the summons the suit was dismissed as to John C. Vo-

gel, by my suggestion, no charge being made against him in the affidavit. On September 23, 1865, the Supreme Court, composed of a new set of judges *de facto*, met at St. Louis, pursuant to the following call, viz :

"SUPREME COURT—SPECIAL TERM.—In vacation of the Supreme Court of Missouri, September 4, 1865.—Ordered that a Special Term of the Supreme Court of the State of Missouri be held at the Court-house in the city and county of St. Louis on Friday, the 22d day of September, 1865.

"And it is further ordered that a copy of this order be published in some newspaper printed and published in the city of St. Louis for at least ten days preceding said term.　　　　　NATH'L HOLMES, ⎱ *Judges Supreme Court.*
　　　　　　　　　　　　　　　　W. L. LOVELACE, ⎰

"In pursuance of the above order, notice is hereby given that a Special Term of the Supreme Court of Missouri will be held at the Court-house in the city and county of St. Louis on Friday, the 22d day of September, 1865.
　　　　　　　　　　　　　　　　　　　　　　JOHN A. WILLIS, *Clerk.*
"NOTE.—The docket will not be taken up."

That part following the names of the judges was in the handwriting of Charles D. Drake.

On that day a petition *not sworn to* was presented by James S. Thomas, one of the defendants in the proceedings for contempt, signed by Henry A. Clover, R. M. Field and Samuel Knox, three of the other defendants, as attorneys, and addressed to the court, consisting of three judges, two of whom were also defendants, asking for what the learned counsel call "the people's writ of prohibition" against said Mead and myself by the *descriptio personæ* of judge of this court, to prevent any further proceedings in the injunction suit of Mead v. Thomas. A rule *nisi* was entered, and a copy served on me on the same day to appear on September 25, at 10 o'clock, and show cause why such writ should not be issued. Not understanding how a court composed of three judges, where the law required two to make a quorum, and where two of them were directly interested, could sit in judgment on the case, I thought it in vain to attempt to show cause, and did not do so, and the rule was made absolute, and a final order entered prohibiting any further proceedings in the case.

There is some confusion of terms in these proceedings. The rule *nisi* issues only in the case of Mead v. Thomas, &c. This does not necessarily touch the case *Ex parte* Wagner, &c. The writ of prohibition is not "the people's writ" except in New York. A petition not sworn to is not allowed by our statute.

The writ of prohibition issues to an inferior *court*, and the *parties* to the proceedings in that court. This one issues at the instance of one defendant, and three other defendants as his attorneys, on a petition addressed to two of the other defendants as part of the court. But I will overlook all mere irregularities.

I have shown that Mr. Mead was the clerk under Judges Dryden and Bay. The injunction was issued on June 13th, while they were on the bench acting as judges *de facto*, at least. The outrage, to prevent which the injunction was issued, was committed on June 14th, pursuant to the following order and instructions, both dated on June 14th :

Thomas v. Mead et al.

"HEADQUARTERS STATE OF MISSOURI, June 14, 1865.
"*Special Order.*]

"I. The usurping judges of the Supreme Court will be compelled to submit to the Ordinance of the State Convention vacating certain offices.

"II. David Wagner, Walter L. Lovelace and Nathaniel Holmes will be put in possession of the Supreme Court-room in the Court-house of St. Louis, with all the records, seals, furniture, books and papers of the office of the clerk of the Supreme Court.

"III. Brig. Gen. D. C. Coleman is charged with the execution of the order, and will employ such force for that purpose as he may deem necessary, and arrest all who may oppose him.

THOS. C. FLETCHER,
*Gov. & Commander-in-Chief.*"

"HEADQUARTERS STATE OF MISSOURI, June 14, 1865.

"GENERAL:—Herewith please find Special Order directing you to enforce the 'Ordinance of the State Convention vacating certain offices,' by putting the recently-appointed Judges of the Supreme Court into the possession of the court-room, records, &c., of that court.

"You will proceed to the Court-house, and on the arrival of Messrs. Dryden and Bay deliver to each of them the sealed note addressed to each of them respectively. An officer of the city police will accompany you, and will have a force of city police at hand.

"If, after delivering the notes, the said Bay and Dryden do any act to disturb Messrs. Lovelace and Wagner in entering on said discharge of their duties as Judges, you will direct the policemen to arrest them and take them before the City Recorder, and at once inform me of that fact.

"In case Messrs. Bay and Dryden do not come to the Court-house at nine o'clock or soon thereafter, you will cause the note referred to, to be delivered to them at their rooms.

"In putting the Judges into possession of the court-room and clerk's office, you will, as far as convenient in your judgment, avoid the use of violent means; but if in your judgment necessary, do not hesitate to employ all the force it may require.

THOS. C. FLETCHER.
"To Gen. David C. Coleman."

I now proceed to state the law on the subject. In doing so, I assume that the Supreme Court *intended* this writ of prohibition to apply to the case *Ex parte* Wagner, &c., as well as to that of Mead v. Thomas, &c. I do so because it cannot be doubted that this special session and this whole proceeding were got up to prevent this court from punishing Thomas and his three lawyers; and two of the judges of the Supreme Court and their lawless associates, for what is charged against them on the files of this court under oath, and which, if true, is a gross violation of the law. *The subject of contempt is the exclusive care of the court against which such contempt is committed, and no other court of any jurisdiction can interfere by writ of error, appeal, habeas corpus, certiorari, or prohibition, so long as the court in question is acting within its jurisdiction and by rules of practice known to the law.*

17—VOL. XXXVI.

Thomas v. Mead et al.

Quo Warranto. (R. C. 1855, § 1, p. 1308.) "In case any person shall usurp, intrude into, or unlawfully hold or execute any office or franchise, the Attorney General or circuit attorney of the proper circuit, with the leave of any Circuit Court, shall exhibit to such court an information in the nature of a *quo warranto*, at the relation of any person desiring to prosecute the same." (See remainder of the act.) It is the only law we ever had for trying the title to an office.

If this court had jurisdiction to try the title to Mr. Mead's office between him and any other claimant, surely it had jurisdiction to grant an injunction to prevent that question from being settled by a lawless mob. Since I have been on this bench, a number of cases of *quo warranto* have come before me : in but one of them was the question of jurisdiction raised ; that was the case of *Jackson* v. *Emerson*, which came here by change of venue from the Iron county Circuit Court. A motion was made by Emerson's counsel to dismiss the writ for want of jurisdiction ; I overruled the motion, and I will not soon forget the valuable aid I received from the long and able argument of my brother Nathaniel Holmes, Esq., who was the attorney of Jackson. He was not then a party interested. In that argument he convinced me that the Circuit Court of the proper county was the place to try the title of *any office,* and I ruled accordingly. Now, if any person claimed Mr. Mead's office, or that of either Dryden or Bay, his remedy was to apply to the court for a writ of *quo warranto*, and the matter could have been tried in five or six days and an appeal taken, if desired, by either party, under the ordinary peaceful forms of law. If this court had jurisdiction to try the title to Mr. Mead's office, surely it had power under the express statute on that subject to grant an injunction to restrain a lawless political mob from trying the same question by force of clubs. (This point I will not argue.) And if it had jurisdiction to issue an injunction, then the statute (R. C. 1855, p. 1250) gives the express power to enforce it by attachment, fine and imprisonment.

When the writ of prohibition was issued, then it follows from the above that this court had jurisdiction of both the cases named at the head of this paper. It is proper then to inquire, was this court proceeding against the parties defendant under the recognized rules of law ? When the affidavit of Mead was filed on July 17, 1865, I might have ordered an attachment forthwith against all the parties named it. I now regret that I did not do so. But I then thought the milder course the proper one, and ordered a summons to the defendants Wagner, &c., to appear on the first day of this term to show cause why an attachment should not issue against each of them for contempt. This is the mildest form of proceeding known to the law against parties charged with contempt. I had prepared written interrogatories to place on file for these parties to answer in writing, under oath, privately, without the unpleasantness of an oral examination in open court, when the rule *nisi* aforesaid was interposed. I therefore declare that this court *had jurisdiction* of the case of Mead v. Thomas, and the case of *Ex parte* Wagner, Lovelace, &c., for contempt, and was proceeding according to the mildest rules of law to discharge its duty when this rule *nisi* and the writ of prohibition unlawfully interfered.

Bouvier's Law Dictionary defines contempt to be "a wilful disregard or disobedience of a public authority," and adds "courts of justice have an in-

herent power to punish all persons for contempt of their rules and orders, for disobedience of their process, and for disturbing their proceedings." And again, quoting from Kent, he says, "it belongs exclusively to the court offended to judge of contempts and what amounts to them, and no other court or judge can or ought to undertake, in a collateral way, to question or review an adjudication of a contempt made by another competent jurisdiction." This may be considered the established doctrine equally in England as in this country. "The right to issue a capias for a contempt is incident to the jurisdiction of the Court of Common Pleas." (Marimer v. Dyer, 2 Me. 165.) "The power to commit for contempt of court is incidental to all courts of record." (Morrison v. McDonald, 21 Me. 550.) "Every court *must* be the sole judge whether or not a contempt has been committed against it." (4 Cowen, 49.) "The adjudication of a court of competent jurisdiction respecting contempts is not subject to the review of any other court." (1 Blackf. 166.) "In a case of contempt, no appeal or writ of error will lie. Each court is its own exclusive judge of what is a contempt." (5 Yerg. 456, opin. by Catron.) "In case of commitment by this court or the King's Bench, there is no appeal."—C. J. De Grey, in the Mayor of London's case. (3 Wilson, 188.) In the same case, Blackstone, J., said: "The sole adjudication of contempt, and the punishment thereof in any manner, belongs exclusively and without any interference to each respective court. The judgment and commitment of each respective court, as to contempt, must be final and without control." See, also, The People v. Nevins, 1 Hill, 154; also *Ex parte* Yeates, 4 Johns. 314, in which Mr. Justice Kent so highly approves of the opinion of De Grey and Blackstone, in the Mayor of London's case above quoted. "In fine, it seems necessary to the very existence of a court, in the healthy exercise of its powers, that it should have exclusive jurisdiction to judge of contempt to its authority." (1 Bibb, 598; 5 Iredell, 199.) As to the liability of persons not parties to the injunction, or not served with a copy, but who *knew* of its having been issued, see Charleton, p. 43.

In case of contempt, the Supreme Court may revise the action of an inferior court as to the question of jurisdiction only ; as to the fact of a contempt having been committed, and a conviction therefor, there is no appeal. (Case of Hummel & Bishoff, 9 Watt, 431.) In *Ex parte* Kearny, 7 Wheat. (U. S. Sup. Ct.), it was held that "the court would not grant a *habeas corpus* where a party had been committed for a contempt, adjudged by a court of competent jurisdiction. In such a case, the court would not inquire into the sufficiency of the cause of commitment."

Sec. 40, p. 539, R. C. 1855, provides as follows : "No judge of the Supreme Court who is interested in any suit, or related to either party, or who shall have been counsel in any suit or proceedings, which now is or may be instituted, shall sit on the determination thereof." Sec. 20, p. 1234 of same : "The petition, answer and reply must each be verified by the affidavit of the party," &c.

Quoting a phrase or two from the Supreme Court, I have "the unparalleled effrontery" to say that "the highest functionaries of the State Government, executive and judicial, are just as amenable to the law and liable to its penalties as "merely private and unofficial persons."

If any court has the power to issue the writ of prohibition, it should never exercise it except in a very clear case peremptorily calling for an immediate remedy. (2 Iredell, 183.) A writ of prohibition will not lie where the inferior court has jurisdiction. (9 S. & M. 623; 5 Pike, 21; 16 Eng. L. & Eq. 462; 7 Wend. 518; 4 Rich, p. 513; 23 Ala. 94.) At common law, no writ of prohibition can issue until it appears that the question of jurisdiction has been raised and decided in the lower court, (7 English, p. 70.)

To this brief statement of the cases, and the law above cited, I add no comments. I therefore dismiss it.