THE STATE OF MISSOURI ON THE RELATION OF JULIUS CONRAD, Appellant, *v.* ALFRED C. BERNOUDY, Respondent.

*Constitution—Quo Warranto—Ousting Ordinance.*—The provisions of the ordinance of the Convention adopted March 16, 1865, G. S. 1865, p. 47, commonly called the Ousting Ordinance, were within the *powers* of the Convention, and were constitutional.—See Thomas v. Mead, 36 Mo. 242; State v. Bernoudy, 36 Mo. 279.

*Appeal from St. Louis Circuit Court.*

*James Taussig*, for appellant.

*Broadhead* and *Garesché*, for respondent.

HOLMES, Judge, delivered the opinion of the court.

The case presents the single question of the validity of the "Ordinance providing for the vacating of certain civil offices in the State," passed in Convention on the 17th of March, 1865—Gen. Stat. of 1865, p. 47. It arises upon demurrer to the information. The court below sustained the demurrer for the reason "that it appeared from the information that the defendant's term of office had not yet expired, and that the ordinance vacating the office was illegal, inoperative and void."

The court appears to have taken judicial notice of the Constitution and Laws of the State but for the purpose of declaring this ordinance to be null and void, and no part of the Constitution. The former Constitution of the State contained this declaration :

"That the general, great, and essential principles of liberty and free government may be recognized and established, WE DECLARE,

"1. That all political power is vested in and derived from the people.

"2. That the people of this State have the inherent, sole and exclusive right of regulating the internal government, and police thereof, and of altering and abolishing their Constitution and form of government, whenever it may be necessary to their safety and happiness"—Rev. Stat. of 1855, p. 82.

The Legislature under this Constitution, on the 13th of February, 1864 (Laws of 1863-4, p. 24), passed "An act to provide for the calling a State Convention," which, by the fifth section of the act, should " proceed to consider, 1st, such amendments to the Constitution of the State as may be by them deemed necessary for the emancipation of slaves; 2d, such amendments to the Constitution of the State as may be by them deemed necessary to preserve in purity the elective franchise to loyal citizens, and such other amendments as may be by them essential to the promotion of the public good." Under the provisions of this law, the Convention was elected and organized, and proceeded to amend the Constitution in such a manner as they deemed essential for the promotion of the public good, and adopted this ordinance among others, and framed and adopted a new Constitution, which was submitted to a vote of the people for ratification, and was finally adopted by them. This body represented the people of the State in their sovereign capacity. The act contained no limitation on the powers of the Convention, when it should be lawfully assembled, even if it were admitted that the General Assembly had the power (which we

think they had not) to place any limit upon the action of a body so called and constituted, whenever it should be thus legally organized as a body, representing the whole people in Convention assembled, for all purposes relating to the public good; though a Convention might be called and elected for one or more specific objects and none other. A power to amend the Constitution in all respects deemed essential for the public good, or to alter or abolish it, if it were deemed necessary for their safety and happiness, necessarily includes the power to amend it in any particular as well as in its total scope.

As to the particular amendment which consisted in this ordinance, it is not without frequent example in the Constitutional History of the State. Similar vacating ordinances or amendments were adopted in 1822 (Rev. Stat. 1855, p. 90), in 1834-5 (ibid. p. 91), in 1848-9 (ibid. p. 93), in 1850-1 (ibid. p. 94), and in 1861 (Ord. of Oct. 16, 1861). The courts have always recognized the validity of these ordinances. In the case of the State v. McBride, 4 Mo. 303, the amendment of 1834-5, which vacated the offices of the judges of the Circuit Courts on the first day of January, 1836, was held to be valid, and the defendant, who had held over after that day, relying upon some irregularity in the legislative proceedings, but not questioning the validity of the amendment, if duly enacted, was adjudged guilty of usurpation and ousted. This concurrent action of all branches of the State government for so long a period, may well be deemed sufficient to settle all questions as to the validity of constitutional ordinances of this nature.

This ordinance was recognized by the executive department; and it was held in Thomas v. Mead, 36 Mo. 242, that all courts sitting under the State government were bound to take judicial notice of the political action of the State Convention, and of the action of the Governor in recognizing the ordinance and putting it into operation as a part of the Constitution of the State. It was so held in effect in Luther v. Borden, 7 How. U. S. 1. In the case of the State v. Ber-

noudy, 36 Mo. 279, which was an *ex officio* information in the nature of *quo warranto*, filed by the Circuit Attorney (in place of the Attorney General) on behalf of the State, against this same defendant, in respect of this same matter, the validity of this ordinance was fully recognized, and, it appearing that the defendant was holding over, by sheer intrusion and usurpation, without a shadow of right, judgment of ouster went against him. No authority has been produced to shake the legal foundations of these decisions, and nothing more remains but to reverse the judgment of the Circuit Court, at the costs of the defendant.

Judgment reversed, and judgment will be entered in this court against the defendant for the costs of suit. The other judges concur.