PEOPLE *v.* WING.

1. BASTARDY—TRIAL—IDENTITY OF CHILD.

Where the record on appeal from a judgment in bastardy proceedings does not indicate that there was any dispute as to the identity of the child, the statement of counsel, made in the course of his argument to the jury, that the child was present in the court-room, within view of the jury, will be assumed to have been true.

2. SAME—RESEMBLANCE BETWEEN CHILD AND PUTATIVE FATHER—COMMENTS OF COUNSEL.

A conviction in bastardy proceedings will not be reversed because the jury were asked by the people's counsel to consider an alleged resemblance between defendant and the child.

3. SAME—ORDER OF MAINTENANCE—INDEFINITENESS.

An order of maintenance in bastardy proceedings, which provides that the father shall pay a specified sum per week

towards the support of the child, "until the further order of the court," is erroneous, since such order should be definite, fixing a limit to the liability of the father, and not leaving the matter open for subsequent application.

4. SAME—DEFAULT IN GIVING BOND—COMMITMENT. .
   An order of maintenance in bastardy proceedings, which provides that unless the proper bond, conditioned for the performance of the terms of the order, be executed by a certain date, the father shall be committed to jail until he shall execute and deliver such bond, "and until the further order of the court," is erroneous, in that it permits the restraint of the father after the required bond is furnished and approved.

5. SAME—CERTIORARI—REMANDING CAUSE.
   Where, on *certiorari*, the order of maintenance in bastardy proceedings is declared bad for indefiniteness, the case may be remanded, with directions to the court to vacate the order, and enter one in conformity with the decision of the Supreme Court.

*Certiorari* to Jackson; Peck, J. Submitted January 28, 1898. Decided February 16, 1898.

Nelman F. Wing was convicted of bastardy. Conviction affirmed and record remanded.

*John W. Miner*, for appellant.

*Richard Price*, for the people.

HOOKER, J. The defendant was found guilty by a jury in bastardy proceedings, and it was adjudged that he was the father of complainant's child, and that he stand chargeable, with the assistance of the mother, for the maintenance of said child. It was—

"Therefore ordered that the said Nelman F. Wing do pay to the said Myrta A. Holmes, the mother of the said child, for its maintenance, the sum of $1.50 per week, payable every four weeks, the first payment of six dollars to be made on the 11th day of November, 1897, and six dollars to be paid at the end of each and every four weeks thereafter, until the further order of this court.

"It is further ordered that said Nelman F. Wing give

a bond with two good and sufficient sureties, to be approved by this court, in the penal sum of $700, to the superintendents of the poor for the county of Jackson, conditioned that he, the said Nelman F. Wing, shall abide by and perform the conditions of this order, and shall also indemnify and bear harmless said county of Jackson from all damages it may sustain by reason of its becoming chargeable with the maintenance of said child.

" And it is further ordered that said defendant have until the 6th day of November, 1897, at 12 o'clock noon of said day, in which to comply with the terms of this order by giving said bond as aforesaid; and, if said bond be not furnished by that time, that the said defendant be committed to the common jail of said county until he shall execute and deliver such bond, and until the further order of this court."

Defendant brings *certiorari*. The following errors are assigned in the petition for the writ.

"And deponent alleges as error that the statement of said counsel for the complainant to the jury was with reference to a matter not in evidence in the case, and was made with intent to prejudice and did prejudice the jury against defendant. And deponent alleges as error, also, that said judgment is void for the reason that it is not final, in that it contemplates a further order by such court in such case; and that it is also void for uncertainty, in that it fixes no time at which the payments provided for shall cease; and that it is also void for the further reason that deponent, in default of giving the bond mentioned, shall be committed to the common jail of the county of Jackson until he shall execute and deliver such bond, and until the further order of the court."

It is contended that the conviction was erroneous for the reason that counsel called attention to an imaginary resemblance between the infant and the defendant, and that the judgment was void because it did not point out, distinctly and definitely, what was to be required of the defendant.

During the argument of counsel for the people, the following occurred:

" *Mr. Price:* The child has been here in court, and you can tell whether it is more like Dan Ferguson. It is

the image of Nelman Wing. (This is-excepted to by Mr. Miner.)

"*The Court :* I don't think that is correct, Mr. Price. There has been no exhibition of the child to the jury. *   *   *

"*Mr. Price :* It is for you to say, gentlemen, whether or not that child is Dan Ferguson's or Nelman Wing's, and you have seen the child.

"*Mr. Miner :* I want all that taken down, and I except to it.

"*Mr. Price :* He has several times, during our delibera-tions here, disturbed us with his prattling; but he is en-tirely innocent, as Mr. Miner says, and entitled to just as much consideration as any of us. Notwithstanding the untoward circumstances that surrounded his birth, he may yet write his name higher upon the roll of honor than ever the name of Nelman F. Wing was yet written; and I pray God that he may. I pray God that good fortune may wait on that child at every turn, and that his cowardly father, who has turned his back upon him, and not only denied him his name, but has undertaken to drag in the dirt his mother, may yet live to regret the day that he turned his back upon that child. Gentlemen, that is all I have to say. As I say, I wish I had more time to say more about this case. I appeal to you, do no wrong to that innocent child, do no wrong to womanhood, and do no wrong to your own manhood; and, if you do that, I have no fears about the outcome of this case."

We gather from the record that there was no dispute as to the identity of the child, although counsel for the defendant says that it was not proved. The record does not show this, and we cannot assume it. No such point was made in the trial court. Mr. Price stated, without contradiction, that the child was in court, within view of the jury, and we must assume this to be true. In the case of *People* v. *White,* 53 Mich. 539, the unreliability of this kind of evidence is commented upon, but the court declined to reverse the cause because the jury were asked to consider the alleged resemblance. In other States the decisions are not harmonious, some holding that such com-parisons are not permissible, others holding them permis-sible. Among the latter are the courts of Massachusetts,

New Hampshire, North Carolina, New Jersey, Alabama, and perhaps others. When the race or color is involved, other States recognize the propriety of an exhibition of the child. A discussion of the subject will be found in 3 Am. & Eng. Enc. Law (2d Ed.), 885, 886, and notes, where the authorities are collected. The case of *People* v. *White* seems nearly on all fours, and, in our judgment, should rule this case.

Two points are made upon the order: (1) That it is uncertain, inasmuch as no definite amount is fixed; (2) that it subjects the defendant to imprisonment, not only until he shall furnish the bond required, but also until the further order of the court. In *Cross* v. *People*, 10 Mich. 24, the syllabus says that the order "should definitely point out and fix the liability of the defendant." This language is stronger than the opinion warrants, perhaps, especially as the order in that case did not fix any definite sum that the father should pay, and provided only that he should pay, with the assistance of the mother, a certain sum monthly, until the further order of the court. This was held void for uncertainty, and we do not discover that the decision rested upon the ground that the period that such payments were to continue was not fixed. In *State* v. *Eichmiller*, 35 Minn. 241, such an order was held to be valid, in view of the uncertainty of the length of time that the welfare of the child might require it, and the opportunity for the defendant to move the court to terminate the obligation. In *Mariner* v. *Dyer*, 2 Me. 171, such an order was sustained. What the statute may have been upon which the Minnesota case rests we are not advised, but that of Maine is much like our own, and contains no express authority for such a practice. An English case, *Rex* v. *Thomas*, 2 Shower, 129, supports a contrary rule, as do two early Connecticut cases,—*Cheesborough* v. *Baldwin*, 1 Root, 229, and *Benedict* v. *Roberts*, 2 Root, 496. See, also, 3 Enc. Pl. & Prac. 308. We are of the opinion that the better doctrine is that the order should be definite, and fix a limit to the liability, and that it should

not be left open for subsequent applications to the court. Such seems to be the spirit of the *Cross Case, supra,* and the best policy would seem to justify it. We also think that the order should not have permitted the restraint of the defendant after furnishing the required bond, and its approval. The cause will be remanded, with direction to the court to vacate the order, and enter one in conformity to these views,—a practice which seems warranted by the case of *Cross* v. *People, supra.*

The other Justices concurred.