SCHIGUR v KECK

Docket No. 78-3944. Submitted June 21, 1979, at Lansing.—Decided November 20, 1979.

Victoria Schigur filed a complaint in 1976 alleging that Jimmy Keck was the father of Steven Schigur, who was born to her on December 30, 1970. Plaintiff testified at trial that she and Keck had sexual relations from February of 1969 until April 30, 1970, and that she did not have sexual relations with anyone other than defendant during their relationship. While plaintiff was testifying, Steven Schigur was present in the courtroom. She viewed photographs of her son and of defendant, which were admitted without objection, and remarked that her son's hair, eyes, hands, jaw, ears, and feet resembled those of defendant. A friend, Tammy Ketko, testified over objection that Steven's jaw line and facial features resembled those of defendant, his brother and nephew. Another friend, Janet Stewart, testified over objection that Steven resembled defendant in his face and hands and in the manner in which he walks. Judgment for plaintiff and order of filiation and support entered, Macomb Circuit Court, Frank E. Jeanette, J. Defendant filed a motion for a new trial on the ground that Janet Stewart's testimony regarding the physical resemblance between defendant and Steven was improperly admitted and prejudiced defendant's right to a fair trial. Motion denied, defendant appeals claiming that the trial court erred in permitting lay witnesses to testify as to physical resemblances between himself and plaintiff's son. *Held:*

1. In a paternity action, a plaintiff's child may be exhibited to the fact finder for purposes of comparing the child's features to those of the putative father.

2. A trial court may permit the admission of lay opinion testimony identifying resemblances between a child and the putative father, limited, however, to individual features and specific traits.

3. The current evidentiary rule permits the admission of lay

References for Points for Headnotes
[1, 2] 10 Am Jur 2d, Bastards § 41 *et seq.*
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 14.

testimony in a paternity action where the testimony comparing the specific traits and features of a child and putative father is based on the perception of the witnesses and helpful to the determination of the issue of paternity. Witnesses Ketko and Stewart related their perceptions of resemblance, which were rationally grounded in their personal knowledge of plaintiff, her child, and defendant. Their testimony was helpful to a clear determination of the key issue in the case, paternity. The trial court did not err in permitting lay witnesses to testify as to physical resemblances between defendant and plaintiff's son.

Affirmed.

1. BASTARDS — PATERNITY PROCEEDINGS — EXHIBITION OF CHILD — COMPARISON WITH PUTATIVE FATHER.

A plaintiff's child, in a paternity action brought against the child's putative father, may be exhibited to the fact finder for purposes of comparing the child's features to those of the alleged father.

2. BASTARDS — PATERNITY — EVIDENCE — LAY OPINION TESTIMONY — COMPARISON WITH PUTATIVE FATHER — EXPERT WITNESSES — CREDIBILITY OF WITNESSES — WEIGHT OF EVIDENCE.

A trial court in a paternity action may permit the admission of lay opinion testimony identifying resemblances between a child and the putative father, limited, however, to individual features and specific traits; experts are not the only witnesses qualified to inform the jury of notable resemblances between a putative father and the child; therefore, it is for the jury to decide the credibility of the witnesses and the weight to be placed on the different items of evidence presented.

3. BASTARDS — PATERNITY — EVIDENCE — LAY OPINION TESTIMONY — COMPARISON WITH PUTATIVE FATHER — RULES OF EVIDENCE.

The testimony of a lay witness in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue; testimony comparing the specific traits and features of a child and putative father, in a paternity action, is based on the issue of paternity; after such testimony is admitted it is for the jury to determine the ability of the witness to observe and draw comparison (MRE 701).

*George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Robert*

*John Berlin,* Assistant Prosecuting Attorney, for plaintiff.

*Ross, Bruff & Henriksen,* for defendant.

Before: CYNAR, P.J., and MACKENZIE and L. W. CORKIN,* JJ.

MACKENZIE, J. Defendant appeals as of right from an order of filiation and support issued August 14, 1978, pursuant to a jury finding of paternity in a Macomb County Circuit Court trial.

Plaintiff filed a complaint on May 4, 1976, alleging that defendant is the father of Steven Schigur, who was conceived during March, 1970, and born to plaintiff on December 30, 1970. Plaintiff testified at trial that she began dating defendant in February, 1969. They had frequent sexual relations, and he kept his clothes at her house. She did not have sexual relations with anyone other than defendant during their relationship, which continued until April 30, 1970, when plaintiff returned defendant's clothes to him and informed him that she was pregnant.

While plaintiff was testifying, her son, Steven Schigur, was present in the courtroom. She viewed plaintiff's exhibits 1 and 2, photographs of her son and of defendant, which were admitted without defendant's objection, and remarked that her son's hair, eyes, hands, jaw, ears, and feet resembled those of defendant.

Tammy Ketko testified that she lived with plaintiff periodically from 1969 to 1971, and was present when defendant visited plaintiff. She stated that plaintiff did not see other men while she was dating defendant. Over defense counsel's objection,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Ketko testified that Steven's jaw line and facial features resembled those of defendant, defendant's brother, and defendant's nephew. In response to defendant's objection to this testimony, the trial court noted that the defense would have an opportunity to cross-examine Ketko.

Another of plaintiff's friends, Janet Stewart, testified over defense counsel's objection that Steven resembled defendant in his face and hands and in the manner in which he walks.

Defendant testified that his relationship with plaintiff ended during February of 1970, when he took a vacation. At no time during the seven years between Steven's conception and trial did plaintiff contact defendant contending that defendant was Steven's father or requesting support for Steven.

On August 14, 1978, an order of Filiation and Support was entered by the circuit court.

On September 11, 1978, the trial court denied defendant's motion for a new trial on the ground that Janet Stewart's testimony regarding the physical resemblance between defendant and Steven was improperly admitted and prejudiced defendant's right to a fair trial.

Defendant contends on appeal that the trial court erred in permitting lay witnesses to testify as to physical resemblances between himself and plaintiff's son.

Michigan cases have permitted exhibition of the plaintiff's child to the fact finder in a paternity action brought against the child's putative father. In *People v White,* 53 Mich 537; 19 NW 174 (1884), the Supreme Court noted that plaintiff's infant child was properly in court, and held that arguments bearing upon the resemblance of the child to the father, although a "little preposterous"

considering the age of the infant, were not a source of error.

Adhering to the *White* holding, the Supreme Court in *People v Wing*, 115 Mich 698; 74 NW 179 (1898), declined to reverse merely because the jury had been asked by the plaintiff's attorney to compare the physical characteristics of the putative father with those of the child, who was present in the courtroom. Exhibition of an infant was also permitted in *People v Haab*, 260 Mich 673; 245 NW 545 (1932). Alluding to the *White* holding, the Supreme Court ruled that:

"The probative value of the exhibit was not dependent upon age, but upon resemblance or want of it as a fact. The age and immaturity of the child affected the weight of the evidence and not its admissibility * * * Exhibition of even so young a child might in some cases furnish the most cogent evidence in favor of an accused." *Haab, supra,* pp 676-677.

Generally, the position taken by a court toward exhibition of the child to the jury is the same as the position taken toward admission of lay opinion evidence of resemblance. In *Glascock v Anderson,* 83 NM 725; 497 P2d 727 (1972), the child was permitted to be exhibited to the jury so long as it was of sufficient age to possess settled features, and so long as the showing was made to point out the specific traits which resemble those of the putative father. Lay opinion testimony was also deemed admissible so long as it also purported to compare specific characteristics. In *State v Cabrera,* 13 Ariz App 527; 478 P2d 142 (1970), exhibition of an infant was held to be within the trial court's discretion; objections went to the weight rather than the admissibility. The Court also held that plaintiff's opinion evidence of resemblance

could be received and considered by the jury, "for whatever it was worth".

Jurisdictions taking restrictive positions on exhibition of the child appear to take restrictive positions on admission of lay opinion testimony as well. In *People in the Interest of RDS, Child,* 183 Colo 89; 514 P2d 772 (1973), where no exhibition was permitted, the Supreme Court of Colorado stated that only expert testimony concerning characteristics bearing on paternity may be received. Similarly, the Supreme Court of Hawaii in *Almeida v Correa,* 51 Hawaii 594; 465 P2d 564 (1970), found exhibition to be improper and held that only experts may testify as to resemblance, since specialized knowledge is required in a field where both hereditary and nonhereditary factors come into play.

After careful consideration, we hold that a trial court may permit the admission of lay opinion testimony identifying resemblances between the child and the putative father, limited, however, to individual features and specific traits. We agree with the court in *Glascock v Anderson, supra,* that experts are not the only witnesses qualified to inform the jury of notable resemblances between the putative father and the child. It is for the jury to decide the credibility of the witnesses and the weight to be placed on the different items of evidence presented.

We base our decision in part upon the existence of precedent in Michigan for permitting exhibition of the child to the fact finder for purposes of comparing the child's features to those of the putative father. *People v White, supra,* expressly permits "argument" on the resemblance issue. Since a court's policy on exhibition to the jury is often similar to its position on lay opinion testi-

mony, there is support for the position that Michigan should permit lay testimony on resemblance.

Finally, we find that Michigan Rule of Evidence (MRE) 701, the current evidentiary rule concerning opinion by lay witnesses, permits the admission of such testimony. According to this rule:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Testimony comparing the specific traits and features of a child and putative father is based on the perception of the witness and is helpful to the determination of the issue of paternity. The ability of the witness to observe and draw comparisons is, of course, a matter for the jury to determine.

In light of our holding permitting lay testimony of resemblances as to individual features and specific traits, we find no error in the instant case. The lay witnesses related their perceptions of resemblance, which were rationally grounded in their personal knowledge of plaintiff, her child, and defendant. Their testimony was helpful to a clear determination of the key issue in the case, paternity. Even though the child had been viewed by the jury before the witnesses testified, the testimony drew attention to specific features which were similar in both defendant and the child. Thus, the testimony was not superfluous.

Affirmed. Costs to plaintiff-appellee.