BURNSIDE v GREEN

Docket No. 102192. Submitted March 14, 1988, at Detroit. Decided
September 8, 1988.

Ruthie Burnside brought a paternity action in the Saginaw
Circuit Court against Everett Green. The court, Fred J. Borch-
ard, J., found defendant to be the father of plaintiff's child after
allowing the admission of evidence of blood test results and
after refusing to allow evidence of the appearance of defen-
dant's son by another woman to rebut evidence that plaintiff's
child resembled defendant. Defendant appealed.

The Court of Appeals *held:*

1. Evidence of the appearance of a child of defendant by
another woman was irrelevant and properly excluded.

2. Blood test results are admissible in a paternity action if a
foundation is laid that the blood tested was that of plaintiff,
defendant, and the child, that the results were based on relia-
ble blood samples and that the blood taken was the blood
tested. The chain of identification is shown by personal knowl-
edge that the questioned samples were subject to reliable, usual
office procedures established for tracing blood samples between
the time the samples were drawn and the time they were
analyzed. Either direct or circumstantial evidence may be used
in establishing the chain of identification. The foundation laid
was sufficient and the results were properly admitted.

Affirmed.

1. PARENT AND CHILD — EVIDENCE — FAMILY RESEMBLANCE — RULES
OF EVIDENCE.

The trial court in a paternity action may permit the admission of
lay opinion testimony identifying resemblances between the

REFERENCES

Am Jur 2d, Bastards 41 *et seq.,* 118, 119, 120, 121.

Am Jur 2d, Evidence 780-782, 1107.

Paternity proceedings: right to jury trial, 51 ALR4th 565.

Admissibility and weight of blood-grouping tests in disputed pater-
nity cases. 43 ALR4th 579.

Bastardy proceedings: Propriety of exhibition of child to jury to
show family resemblance, or lack of it, on issue of paternity. 55
ALR3d 1087.

child and putative father, limited to individual features and specific traits; in determining whether the defendant was the father of the child, the resemblance between the defendant and a child not the product of his relationship with the plaintiff is irrelevant (MRE 403).

2. PARENT AND CHILD — PATERNITY ACTIONS — BLOOD TESTS.

A party attempting to admit blood tests to establish paternity must lay a sufficient foundation for admitting such tests by showing (1) the blood tested was in fact that of defendant, the plaintiff, and the child, (2) the test results were based on reliable blood samples, and (3) a chain of identification from the time the blood samples were taken to the time the samples were analyzed; the chain of identification is shown by personal knowledge that the questioned samples were subject to reliable, usual office procedures established for tracing blood samples between the time the samples were drawn and the time they were analyzed; either direct or circumstantial evidence may be used in establishing the chain of identification.

*Alvin J. Wilson,* Assistant Prosecuting Attorney, for plaintiff.

*O'Farrell, Smith & Popielarz* (by *Donald T. Popielarz*), for defendant.

Before: WAHLS, P.J., and MAHER and G. S. ALLEN,* JJ.

PER CURIAM. Defendant appeals as of right from a July 16, 1987, order of support entered against him by the Saginaw Circuit Court. On July 4, 1986, the court entered an order of filiation which determined that defendant was the father of a child, born to plaintiff on May 22, 1984. We affirm the 1986 order of filiation and the 1987 order of support entered against defendant.

On May 27, 1985, plaintiff filed a paternity complaint pursuant to Michigan's Paternity Act, MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* alleging

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

that defendant was the father of her child. After a default judgment of filiation was set aside, a bench trial was held on June 25, 1986.

At trial, plaintiff testified that she was not married and became pregnant in August, 1983, after having sexual intercourse with defendant at her home. She denied having sexual relations with other men between July and September 1983. Plaintiff submitted two paternity test reports which determined that defendant's probability of being the father of the child was 99.4 percent. Plaintiff also testified that the child resembled defendant. The court then viewed the child.

Defendant admitted having sexual intercourse with plaintiff from mid-August, 1982, until November, 1984. He believed, however, that she was also seeing other men. Defendant did not believe the child was his, explaining that he received a message from the "third heavens" and a voice came to him saying, "This child is not yours." This same message was given to him by an archangel, a divine spirit sent from God.

Following testimony, the court adjudged defendant to be the father of the child. Defendant appeals as of right from this determination and award of child support, raising two evidentiary issues.

First, defendant contends that it was error for the trial court to refuse to view defendant's twelve-year-old son to rebut plaintiff's evidence of family resemblance. The court ruled that such a viewing was irrelevant to the instant case. We agree.

The twelve-year-old boy was not the son of plaintiff, but was the product of defendant's relationship with another woman. The trial court may permit the admission of lay opinion testimony identifying resemblances between a child and pu-

tative father, limited to individual features and specific traits. *Schigur v Keck,* 93 Mich App 763, 768; 286 NW2d 917 (1979). However, in determining whether defendant was the father of the child in question, the resemblances between defendant and a child not the product of his relationship with plaintiff is irrelevant and was properly denied under MRE 403.

Second, defendant contends that the trial court erred in admitting the blood test results because an insufficient foundation was laid. We do not agree.

MCL 722.716; MSA 25.496 provides that blood test results are admissible in paternity actions. However, the statute does not specifically address the foundation requirements for the admission of such evidence. In *Willerick v Hanshalli,* 136 Mich App 484; 356 NW2d 36 (1984), this Court held that certain minimal foundation requirements are necessary to ensure reliability of blood test results and relevancy under MRE 401. The panel stated that plaintiff is required to show that the blood tested was in fact that of the defendant, the plaintiff, and the child, and that the test results were based on reliable blood samples. This includes establishing a chain of identification from the time the blood samples are taken to the time the samples are analyzed. Such a chain of identification must be shown by way of testimony based on personal knowledge. *Willerick, supra* at 488-489.

It is this "personal knowledge" requirement which is in conflict between the parties in this case and in subsequent decisions of this Court. In *Zyskowski v Habelmann,* 150 Mich App 230, 245-246; 388 NW2d 315 (1986), vacated on other grounds 429 Mich 873 (1987), a panel of this Court criticized *Willerick's* personal knowledge requirement holding that chain of custody may be shown by

either direct or circumstantial evidence. While *Zyskowski, supra,* involved blood alcohol tests rather than paternity blood tests, this Court in *Atkinson v Atkinson,* 160 Mich App 601, 607-608; 408 NW2d 516 (1987), adopted the *Zyskowski* ruling, stating:

> The foundation requirements for the admission of HLA test results in a paternity action are that the blood tested was in fact that of the defendant, the plaintiff, and the child, and that the test results were based on reliable blood samples. *Willerick v Hanshalli,* 136 Mich App 484, 488; 356 NW2d 36 (1984). This foundation includes establishing a chain of identification from the time the blood samples were taken to the time the samples were analyzed, *either by direct or circumstantial evidence. Id.; Zyskowski v Habelman* [sic], 150 Mich App 230, 244-245; 388 NW2d 315 (1986), lv gtd 426 Mich 865 (1986). [Emphasis added.]

We believe *Atkinson, supra,* presents the better approach and adopt the foundation requirements cited therein. Following *Atkinson, supra,* a party attempting to admit blood tests to establish paternity must lay a sufficient foundation for admitting such tests by showing (1) the blood tested was in fact that of defendant, the plaintiff, and the child, (2) the test results were based on reliable blood samples, (3) a chain of identification is established from the time the blood samples are taken to the time the samples are analyzed, and (4) the chain of identification is shown by personal knowledge that the questioned samples were subject to reliable, usual office procedures established for tracing blood samples between the time the samples were drawn and the time they were analyzed. Either direct or circumstantial evidence may be used in establishing this chain of identification.

Applying this standard to the instant case reveals that a sufficient foundation was laid for the introduction of the blood test results. Plaintiff first presented the testimony of Dr. Henry Gershowitz, who testified to two paternity test reports prepared by National Legal Laboratories of Okemos, Michigan. These reports revealed a 99.4 percent probability that defendant was the father of the child. On cross-examination Gershowitz admitted it was his function to analyze the test results which the laboratory's secretaries type into a computer and transmit by telephone lines to his computer. He had no independent recollection of the analysis in the instant case because he runs thousands of these tests.

Plaintiff then presented the testimony of Kenard Christensen, who owns National Legal Laboratories, a private company which specializes in genetic blood testing. He explained that plaintiff's proposed exhibits were reports done by his laboratory with the results forwarded for analysis by Dr. Gershowitz, a genetics consultant employed by his laboratory. Christensen explained that his lab had a procedures manual which is always followed and that these procedures have been reviewed by a parentage commission of the American Association of Blood Banks. He testified that the blood samples in the instant case were taken from plaintiff, defendant, and the child in a mobile unit parked behind the Saginaw County Courthouse on January 31 and July 10, 1985. Additionally, thumbprints were taken from each person at the time his or her blood was drawn. Christensen was personally present when the blood samples were drawn and he signed a report form made out at the time of the blood drawing. He then described in detail the procedures followed from this point.

Christensen examined the records and testified that there was nothing to indicate that the usual procedures were not followed. He stated that all of the records appeared to be in usual order.

We find that Christensen's testimony established a proper foundation for the admission of the blood test results. Christensen was personally present when the blood was drawn and he signed a report form to that effect and thumbprints were taken from all three persons. Further, a chain of identification was established by Christensen's testifying from personal knowledge of usual office procedure that the usual office procedure was followed in the instant case based on office records kept in the ordinary course of business. Accord, *Dutilly v Dep't of Health & Rehabilitative Services,* 450 So 2d 1195 (Fla App, 1984) (sufficient foundation laid by submitting affidavit of technician who performed blood tests or submitting business records kept during the regular course of business).

Accordingly, we affirm the circuit court's order of filiation and order of support entered against defendant.