BLACK v DEPARTMENT OF SOCIAL SERVICES

Docket No. 129827. Submitted June 9, 1992, at Lansing. Decided July 7, 1992, at 9:20 A.M.

Wendy Black petitioned the Oakland Circuit Court for review of a hearing officer's affirmance of a decision of the Department of Social Services to remove, as a sanction for noncooperation in identifying the father of her child, the portion of aid to families with dependent children received by her for her individual needs from the total amount of AFDC benefits received for herself and her child. Although a blood test had conclusively excluded the man named by the petitioner from being considered the child's father, she continued to name him as the father. The court, Jessica R. Cooper, J., affirmed, finding that the determination was proper because the petitioner had not cooperated in identifying the child's father. The petitioner appealed, alleging that the blood test cannot be considered conclusive evidence of noncooperation.

The Court of Appeals *held:*

1. The respondent has the burden of proving noncooperation. To do so, the respondent must show both that the mother failed to provide requested information and that she knew the requested information. If the mother honestly believes that the father is the man she has named, her answer is cooperative, even if another man is the father.

2. The respondent presented no evidence that the petitioner had information that she was withholding. The petitioner attested that she lacked any further information.

3. A blood test alone cannot be deemed conclusive evidence with regard to the issue of the petitioner's good faith. A mother who honestly asserts, under oath, that she has no further information regarding the child's father cannot be sanctioned for noncooperation solely on the basis of adverse blood test results.

4. There is no evidence in this case that the petitioner knew more than she was disclosing. The finding of noncooperation is not supported by the evidence.

Reversed.

Oakland Livingston Legal Aid (by *David W. Hull*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *James P. Delaney,* Assistant Attorney General, for the respondent.

Before: Gribbs, P.J., and Hood and C. W. Simon, Jr.,* JJ.

Per Curiam. This is an appeal as of right from a circuit court decision affirming respondent's refusal to lift sanctions imposed on petitioner for noncooperation in identifying the father of her child. We reverse.

Petitioner became pregnant at age seventeen. She delivered a baby girl on September 21, 1982. Both started receiving aid to families with dependent children (AFDC) benefits.

In October of 1983, at the request of respondent Department of Social Services, petitioner, her child, and the putative father submitted to a blood test to determine paternity. The test conclusively excluded the man named by petitioner from being the child's father.

After receiving the test results, petitioner continued to name the same man as the father of her child. In May of 1984, petitioner's AFDC benefits were cut to exclude benefits for her individual needs as a sanction for what respondent determined was her refusal to cooperate in identifying the father of her child. Her child's benefits were not cut.

Although she received notice of the sanction, petitioner did not challenge it until 1989, when

---

* Circuit judge, sitting on the Court of Appeals by assignment.

she requested a hearing.[1] According to respondent, petitioner could have the sanction lifted at any time by identifying the child's father.[2]

Inexplicably, petitioner does not contend that the test results must be erroneous and has apparently not demanded a re-test. She argues, instead, that the blood test cannot be considered conclusive evidence of noncooperation. She contends that she was a virgin before she slept with the putative father and that he was her only sexual partner around the time of the child's conception.

Review of final administrative decisions "shall include, as a minimum," whether they are "authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. The Administrative Procedures Act requires administrative decisions to be set aside "if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following":

(a) In violation of the constitution or a statute.

(b) In excess of the statutory authority or jurisdiction of the agency.

(c) Made upon unlawful procedure resulting in material prejudice to a party.

(d) Not supported by competent, material and substantial evidence on the whole record.

(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

(f) Affected by other substantial and material error of law. [MCL 24.306(1); MSA 3.560(206)(1).]

[1] There is no timeliness problem raised. Additionally, the sanction is a continuing one.

[2] In light of our disposition of this case, we need not address petitioner's argument that the sanction is a permanent one in violation of the unpublished consent judgment of the United States District Court in *Carr v Dempsey,* File No. 80-73657 (ED Mich, January 4, 1992).

The substantial evidence test requires that a decision be supported by "evidence which a reasoning mind would accept as sufficient to support a conclusion. '[Substantial evidence] consists of more than a mere scintilla . . . but may be somewhat less than a preponderance' of the evidence." *Soto v Director, Michigan Dep't of Social Services,* 73 Mich App 263, 271; 251 NW2d 292 (1977) (quoting federal cases). "The . . . findings of the administrative tribunal will ordinarily be upheld." "[I]t is not the Court's function to resolve conflicts in the evidence or to pass on the credibility of the witnesses." *Id.* at 272. Where there is sufficient evidence, the reviewing court—including the circuit court—must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result in its place. *Murphy v Oakland Co Dep't of Health,* 95 Mich App 337, 339-340; 290 NW2d 139 (1980).

The AFDC program was established by Congress under the Social Security Act. The program is financed largely by the federal government, with state matching funds, but is administered by the state. See *King v Smith,* 392 US 309, 316; 88 S Ct 2128; 20 L Ed 2d 1118 (1968). Participating states are required to submit plans implementing the AFDC program for the approval of the Secretary of the Department of Health and Human Services. 42 USC 602(b); see also *King, supra* at 316.

The Social Security Act set out several provisions that must be included in the state AFDC plan, including that "as a condition of eligibility for aid, each applicant or recipient will be required to cooperate with the State . . . in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed." 42 USC 602 (a) (26)(B)(i); see also 45 CFR 232.12(a)(1) and (2). The plan must also "specify that cooperate includes

. . . [p]roviding information, or attesting to the lack of information, under penalty of perjury." 45 CFR 232.12(b)(3).

Respondent has implemented the federal requirements through various manuals. One of these manuals provides that cooperation includes identifying and helping to locate the absent parent and "taking any actions needed to establish paternity and obtain child support (e.g., testifying at hearings or obtaining blood tests)." See DSS, *Program Eligibility Manual,* PPB 85-12, Item 255, pp 3-4 (July 30, 1985).

Respondent has the burden of proving noncooperation. See DSS, *Administrative Hearings Handbook,* ch VII, § A. To do so, respondent must show both that the mother failed to provide requested information and also "[t]hat she knew the requested information." *Id.* "If the mother *honestly* believes that the father is the man she has named, her answer is. cooperative even if another man is the father." *Id.,* § B (emphasis added).

There are no published decisions addressing what constitutes noncooperation. There are, however, at least four unpublished decisions of this Court that, although nonbinding under MCR 7.215(C), are helpful in resolving this question.

In *Karczewski v DSS,* an unpublished opinion per curiam of this Court, decided December 1, 1988 (Docket No. 99945), a finding of noncooperation was reversed where the mother swore that she could not identify the father of her child because she had had sexual relations with several men, none of whom she could name, around the time of conception. This Court found that, because there was no evidence that the mother knew the father's identity and was refusing to provide that information, the finding of noncooperation was unsupported by the record.

In *Myers v DSS,* another unpublished opinion per curiam of this Court, decided July 27, 1989 (Docket No. 108264), a finding of noncooperation was reversed where the man identified by the mother as the father of her child could not be found. Again, this Court found that there had been no evidence presented by the DSS that the mother had any information regarding the putative father that she was refusing to provide.

There are two unpublished cases involving noncooperation in light of blood tests. These two cases are in conflict.

In *Cash v DSS,* an unpublished opinion per curiam of this Court, decided August 22, 1991 (Docket No. 115662), a finding of noncooperation was reversed where the man consistently named as the father was excluded by a blood test. This Court found that the DSS had presented no evidence that the mother had information that she was withholding.

The opposite result was reached in *Hines v DSS,* unpublished opinion per curiam of this Court, decided July 13, 1987 (Docket No. 94634). A panel of this Court found that the administrative tribunal was justified in relying on the blood test results as evidence of noncooperation.

We believe that *Cash* represents the better-reasoned view. Accord *R K v Dep't of Human Services,* 215 NJ Super 342; 521 A2d 1319 (1987); *Atkinson v Ledbetter,* 183 Ga App 739; 360 SE2d 66 (1987); see also *Karczewski, supra; Myers, supra.*

In this case, petitioner has consistently named one man as the father of her baby. There was absolutely no evidence presented below that petitioner possessed information that she was refusing to disclose. She candidly admitted that she could not explain the results of the blood test. In effect,

petitioner did attest to a lack of any further information, under oath and under penalty of perjury.

The test results were admitted by the administrative tribunal with no foundational testimony regarding accuracy, chain of custody, and so forth. See *Burnside v Green,* 171 Mich App 421, 425; 431 NW2d 62 (1988). The hearing officer relied on the test results to conclude that petitioner must be lying or withholding information, and affirmed the sanction imposed by respondent. He did not evaluate petitioner's credibility on the basis of other evidence of minor inconsistencies in her story, including whether she was living with the putative father at the time of conception and how many times they had had intercourse. The possibility that the test results may have been wrong, that petitioner's memory was faulty, or that she might be suffering from delusions was not investigated or discussed.

While it is possible that, in some circumstances, a blood test may be conclusive with regard to the issue of paternity—a question that we do not decide—it cannot be deemed conclusive with regard to the issue of petitioner's good faith. Even respondent's own manuals recognize that the "honesty" of the mother's belief is crucial in finding noncooperation. See DSS, *Administrative Hearings Handbook,* ch VII, § B. Further, under the federal regulations governing the program, cooperation includes "attesting to the lack of information, under penalty of perjury." 45 CFR 232.12(b) (3). Therefore, a mother who honestly asserts, under oath, that she has no further information regarding the child's father cannot be sanctioned for noncooperation solely on the basis of adverse blood test results.

Where, as in this case, there is no evidence that

the mother knew more than she was disclosing, a finding of noncooperation based solely on blood test results is not supported by competent, material, and substantial evidence on the whole record. Petitioner cooperated with respondent within the meaning of the law. Sanctions were unwarranted.

We are not unmindful that our holding may require respondent to come up with evidence that may be peculiarly within a mother's knowledge and, therefore, very difficult to obtain or disprove. However, given that respondent need only prove its case by a preponderance of the evidence, we feel that the task is not insurmountable. Further, our holding is a narrow one, a blood test *alone* is not conclusive evidence of noncooperation.

Reversed.