*In re* KURZYNIEC ESTATE

KURZYNIEC v DEPARTMENT OF SOCIAL SERVICES

Docket No. 151960. Submitted August 3, 1994, at Lansing. Decided November 21, 1994, at 9:20 A.M.

Philip A. Kurzyniec, as personal representative of the estate of Kenneth Kurzyniec, petitioned the Macomb Circuit Court for review of the decision of a Department of Social Services hearing referee that held that the DSS properly denied the petitioner's application for Medicaid benefits for October and November 1989, but that it improperly denied benefits for December 1989. The hearing referee held that because a probate court assumed control of the deceased's assets on his death in December 1989, those assets were not available to the deceased during that month and, accordingly, he had been eligible for Medicaid benefits during that month. However, the hearing referee held that because the application for benefits had been filed after January 1, 1990, the petitioner was required to show that the deceased's assets were less than the $4,000 asset limit during October and November 1989 in order to qualify for Medicaid benefits during those months rather than being automatically qualified for retroactive benefits for those months as would have been the case under the rules in effect before January 1, 1990. The circuit court, Frederick D. Balkwill, J., reversed, holding that the deceased was qualified for all three months, both because it was wrong to deny benefits that would have been payable under the old rule merely because the application for benefits was not filed until the new rule was in effect and because the Medicaid bills in October and November should have been treated as an offset against the deceased's limited assets as those medical expenses were incurred even though those expenses had not actually been paid. The respondent appealed.

The Court of Appeals *held:*

1. The new policy of the respondent of requiring an actual showing of satisfaction of the asset limit before granting retro-

REFERENCES

Am Jur 2d, Welfare Laws §§ 38-40, 53, 56.
See ALR Index under Medicaid.

active benefits for each of the three months before the filing of an application for benefits satisfies the federal requirement of 42 CFR 435.914(a)(2) that state agencies provide retroactive medical benefits for up to three months before the application for benefits if an individual "[w]ould have been eligible for Medicaid at the time he received the services if he had applied (or someone had applied for him)." Because the new policy, although more restrictive than the old policy, satisfies 42 CFR 435.914(a)(2), it satisfies the requirement of 42 CFR 850 that state policies be reasonable.

2. There was adequate notice regarding the change in the method of determining whether a claimant satisfied the asset-limit requirement to support the conclusion of the hearing referee that application of the new method to this claim was not unreasonable. The mere fact that neither the patient nor those pursuing a claim on his behalf were aware that a change was soon to be implemented did not render application of the new policy unreasonable.

3. The federal regulations clearly contemplate that applications for benefits by Medicaid recipients may be handled by a professional assistant; accordingly, the circuit court erred in reversing the order of the hearing referee on the basis that the claimant was unable to apply for benefits without professional assistance.

4. Neither federal nor Michigan law requires that medical expenses as they are incurred be set off against assets for the purpose of determining whether a claimant satisfies the statutory asset limit. While that approach may be more sensible in determining eligibility for medical assistance, it is for the Legislature rather than the courts to make that determination. Accordingly, the circuit court erred in holding that the new policy was unreasonable or unlawful.

Reversed.

SOCIAL SERVICES — MEDICAID — DETERMINATION OF ASSETS.

The Department of Social Services may implement a new policy concerning the method of determining whether a claimant satisfies the statutory asset limit that is more restrictive than the existing policy provided that the new policy satisfies the corresponding federal mandate; the new policy may be applied with respect to claims filed after the implementation of the new policy for services rendered before the date of implementation where adequate prior notice of the impending change in policy has been given.

*Erickson, Knight & Firth* (by *W. Bruce Knight*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Erica Weiss Marsden,* Assistant Attorney General, for the respondent.

Before: MICHAEL J. KELLY, P.J., and CAVANAGH and M. J. SHAMO,\* JJ.

MICHAEL J. KELLY, P.J. Respondent appeals as of right an order of the circuit court reversing the decision of a hearing referee who had ruled that petitioner was ineligible for retroactive medical assistance benefits for October and November 1989. We reverse.

I

Respondent is charged with administering federal Medicaid benefits at the state level. One of respondent's responsibilities is to formulate policies through which medical assistance benefits for the medically indigent are administered. MCL 400.105(1); MSA 16.490(15)(1). Specifically, respondent is charged with fashioning policies that are reasonable and uniform for all individuals in a covered group. 42 CFR 435.850. Respondent's policies are found chiefly in the Program Administrative Manual (PAM) and Program Eligibility Manual (PEM).

Pursuant to PEM, Item 400, an applicant for retroactive medical assistance benefits must have less then $4,000 in assets at the time of filing the application. Item 400 further provides:

---

\* Recorder's Court judge, sitting on the Court of Appeals by assignment.

> Asset eligibility exists when countable assets of the asset group in the month being tested are equal to, or less than, the applicable .[medical assistance] asset limit. . . .
>
> An asset is countable if it is available and not excluded. An asset is considered available when a person has the legal right to use or dispose of it. It is assumed available unless there is evidence to the contrary. When a contract, court order, law, etc., prevents a person from disposing of an asset, it is unavailable.
>
> For applications, [medical assistance] cannot be authorized for future months if the client has excess assets on the processing date.

This policy took effect on January 1, 1990. Under the former policy, an individual qualifying for benefits in the month of application was deemed retroactively eligible for benefits in the preceding three months, even if the individual did not meet the asset requirements in those months. The new policy allows retroactive benefits only for those months in which the applicant met the asset requirements.

II

Petitioner represents the estate of Kenneth Kurzyniec. On October 21, 1989, the deceased was admitted to Mt. Clemens General Hospital, where he remained until his death on December 19, 1989. The deceased had assets amounting to over $12,000 from October 1989 until his death in 1989, and his estate retained those assets until February 1990, when approximately $5,000 was withdrawn to pay for funeral expenses. During his hospital stay, the deceased incurred medical expenses of $150,000. A hospital social worker applied for medical assistance benefits on his behalf in October 1989, but she was unable to obtain from the

deceased, his family, or the hospital information needed to determine his eligibility. Consequently, the application was denied. No hearing was requested. According to petitioner, the deceased also was informed that he had to "spend down" his assets to the level that would qualify him for benefits. However, the deceased died before he was able to pay his medical bills and spend down his assets.

Before the deceased's death, the hospital referred his account to Medicaid Assistance Services, Inc., in order to obtain his medical assistance benefits. Scott McKinley, a representative of the company, had worked closely with respondent in the past, and he testified that no one informed him that the respondent's retroactive eligibility policy was scheduled to change on January 1, 1990. On January 31, 1990, an application for medical assistance benefits for October through December 1989, was filed on behalf of the deceased. The application was denied on March 29, 1990, because the deceased's assets exceeded the $4,000 asset limit in each of the months for which medical benefits were requested.

### III

Following the denial of the January 31, 1990, application for medical benefits, petitioner sought administrative review. The hearing referee ruled that the Michigan probate court assumed control of the deceased's assets when he died intestate in December 1989. Accordingly, the hearing referee reasoned that the deceased's assets were not "available" in December 1989 and that petitioner's application for benefits had been denied erroneously with respect to that month. However, with respect to October and November 1989, petition-

er's assets were available and exceeded the limit of $4,000. Consequently, the hearing referee denied petitioner's request for retroactive benefits for those two months. In doing so, the hearing referee applied the post-January 1, 1990, eligibility policy, because the application for benefits was not filed until January 31, 1990. If the application had been filed while the prior policy was still in effect, petitioner would have qualified for benefits in October and November 1989 simply because he qualified in December 1989.

On appeal, the circuit court reversed the decision of the hearing referee on two grounds. First, it concluded that, because petitioner's claim for all three months would have been granted had the claim been filed before January 1, 1990, petitioner was penalized wrongly because of the delay of other individuals in filing the claim. The court noted that the deceased was unable to handle his affairs during the months of his hospitalization and, therefore, the new eligibility policy was unreasonable as applied to petitioner. Second, the court concluded that a "resource spend down" policy should have been used in applying the $4,000 asset limitation. In other words, the amount of the deceased's limited assets should have been offset by the amount of medical expenses incurred—regardless of whether they actually had been paid—in determining whether he fell below the $4,000 threshold.

IV

Respondent first argues that the circuit court erred in reversing the decision of the hearing referee on the basis that the new policy regarding retroactive medical benefits is unreasonable. We agree.

A

When reviewing a decision of an administrative agency, a court must review the entire record to determine whether the decision is supported by competent, material, and substantial evidence. *Great Lakes Sales, Inc v State Tax Comm,* 194 Mich App 271, 280; 486 NW2d 367 (1992). Substantial evidence is that which a reasonable mind would accept as adequate to support a decision. *Dukesherer Farms, Inc v Director of Dep't of Agriculture,* 172 Mich App 524, 535; 432 NW2d 721 (1988). It is more than a mere scintilla but less than a preponderance of the evidence. *Consumers Power Co v Public Service Comm,* 189 Mich App 151, 187; 472 NW2d 77 (1991).

When there is sufficient evidence, a reviewing court may not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result. *Black v Dep't of Social Services,* 195 Mich App 27, 30; 489 NW2d 493 (1992). Great deference should be given to an agency's choice between two reasonable differing views as a reflection of the exercise of administrative expertise. *Traverse Oil Co v Chairman, Natural Resources Comm,* 153 Mich App 679, 691; 396 NW2d 498 (1986). To reverse an administrative agency's decision as an abuse of discretion under MCL 24.306(1)(e); MSA 3.560(206)(1)(e), a court must find a result so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias. *Marrs v Bd of Medicine,* 422 Mich 688, 693-694; 375 NW2d 321 (1985). To be arbitrary is to decide without reference to principles, circumstances, or significance. *Brandon School Dist v Michigan Education Special Services Ass'n,* 191 Mich App 257, 265; 477 NW2d 138 (1991).

B

The issue regarding the reasonableness of respondent's new policy on retroactive benefits has two components. First, petitioner alleges that the policy is unreasonable on its face. However, the policy conforms with 42 CFR 435.914(a)(2), which requires state agencies to provide retroactive medical benefits up to three months before the month of application if the individual "[w]ould have been eligible for Medicaid at the time he received the services if he had applied (or someone had applied for him) . . . ." This regulation is part of the same set of regulations that require state policies to be "reasonable." 42 CFR 850. It establishes the minimum standard for granting retroactive benefits. Although respondent's new policy is more restrictive than the old one, it clearly meets the standard set forth in 42 CFR 435.914(a)(2).

Second, petitioner contends that the new policy is unreasonable as applied in this case because it unfairly penalizes petitioner for the deceased's physical inability to file an application for benefits before the effective date of January 1, 1990, and for the failure of others to do the same on behalf of the deceased. The hearing referee rejected this argument, choosing instead to enforce the new policy on its effective date as written. We do not believe that the hearing referee's decision evidenced a perversity of will, a defiance of judgment, or an exercise of passion or bias. *Marrs, supra* at 693-694. Respondent is free to change its policies with regard to medical assistance as long as the changes comport with state and federal law. Setting effective dates for new policies is inherent in this process. Strictly enforcing the effective date in this case does not yield an inequitable result. Cf. *Tompkins v Dep't of Social Services,* 97 Mich App

218; 293 NW2d 771 (1980). Respondent's Program Policy Bulletins set forth the policy changes regarding retroactive medical benefits as early as October 1989. The hospital sought the service company's help on November 28, 1989. The assistant in charge of filing the deceased's application apparently did not know about the imminent change and filed the application late. The resulting loss of potential benefits, standing alone, does not warrant a disregard of the clearly established effective date for the new policy. Cf. *Majurin v Dep't of Social Services,* 164 Mich App 701, 707; 417 NW2d 578 (1987).

Furthermore, we decline to endorse the circuit court's reversal of the hearing referee's decision simply on the basis that the deceased was unable to apply for medical benefits without the help of a professional Medicaid assistant. Federal law clearly contemplates the role of such assistants in the Medicaid application process. See, e.g., 42 CFR 435.908; 42 CFR 435.914(a)(2). Indeed, many Medicaid recipients are unable to handle their own affairs. The hearing referee's unwillingness to relax established policies because a Medicaid assistant fails to keep up to date on them does not evidence a perversity of will undermining his decision.

V

Respondent also contends that the circuit court erred in requiring application of a resource spend-down policy to determine the deceased's eligibility for medical assistance. We agree.

Although federal regulations provide for a spend-down policy in determining whether an applicant for medical assistance meets income requirements, 42 USC 1396a(a)(17); 42 CFR

435.831(c) and (d), they are silent on the issue whether states may adopt spend-down policies in determining an applicant's level of assets. Only the latter policy—asset or resource spend down—is at issue in this case. In light of this silence, we believe that federal law permits, but does not require, states to adopt resource spend-down policies in administering Medicaid benefits. See *Roloff v Sullivan,* 975 F2d 333, 342 (CA 7, 1992); *Westmiller v Sullivan,* 729 F Supp 260, 263-264 (WD NY, 1990); *Walter O Boswell Memorial Hosp, Inc v Yavapai Co,* 148 Ariz App 385, 390; 714 P2d 878 (1986); *Matarazzo v Rowe,* 225 Conn 314, —; 623 A2d 470 (1993); *Hession v Illinois Dep't of Public Aid,* 129 Ill 2d 535, 548; 544 NE2d 751 (1989); *Haley v Comm'r of Public Welfare,* 394 Mass 466, 476; 476 NE2d 572 (1985). This conclusion rests on the same body of federal law that requires "reasonable standards" for determining the income or resources available to an applicant for medical assistance. 42 USC 1396a(a)(17). See also 42 CFR 850. Consequently, the sole issue before this Court is whether the Michigan Legislature intended to adopt a resource spend-down policy when it enacted the current statutory scheme for medical assistance. We hold that it did not.

A fundamental rule of statutory construction is to ascertain the purpose and intent of the Legislature in enacting a provision. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). If the language of a provision is clear, its plain meaning is deemed the intent of the Legislature, and it must be applied as written. *Id.* at 208. To the extent construction is necessary, provisions of a statute must be viewed in light of other provisions to carry out the apparent purpose of the Legislature. *Id.* at 209.

Petitioner urges this Court to adopt the reason-

ing employed by other state courts that have applied resource spend-down policies as a matter of legislative intent. Petitioner claims that these states have statutory schemes that are similar to the one in Michigan. Yet, petitioner fails to support this assertion with comparative citations to the medical assistance statutes in Michigan and other states.[1] Our own review of these statutes reveals that, while there are several basic similarities, there are also some crucial differences.

In *Haley, supra,* the Massachusetts Supreme Judicial Court held that a resource spend-down policy applied in that state. The court relied on a specific section in the medical assistance statute providing that up to $2,000 of personal property " 'shall be exempt' " in determining eligibility and " 'shall neither be taken into consideration, nor be required to be applied toward payment or part payment of the cost of medical assistance.' " 394 Mass 477, quoting Mass Gen L, ch 118E, § 10(3). In reaching the same conclusion, the Illinois Supreme Court cited a provision directing the Department of Public Aid to disregard at least $1,500 in assets. *Hession, supra,* 129 Ill 2d 549, citing Ill Rev Stat, ch 23, ¶ 5-2 (1987). The court also noted a provision emphasizing the need to preserve the limited resources of medical benefit recipients for their ordinary maintenance needs and to prevent total or substantial dependency. *Id.,* citing Ill Rev Stat, ch 23, ¶ 5-1 (1987). These provisions reflect a legislative intent that individuals be allowed to retain a certain minimum amount of assets.

While the Michigan statute shares the same goal of providing medical assistance to the medi-

---

[1] The circuit court was led astray by an opinion of the Oakland Circuit Court in *Price v Dep't of Social Services,* Docket No. 85-29160 AA (August 29, 1986), in which that court analogized to and applied Massachusetts law and policy.

cally indigent, it does not share the same focus on exempting or preserving assets. The only mention of asset requirements for medical assistance eligibility appears at MCL 400.106(1); MSA 16.490(16) (1):

> A medically indigent individual is defined as:
>
> * * *
>
> (b) An individual meeting all of the following conditions:
>
> * * *
>
> (iv) The individual, if an aid to dependent children related individual and living alone, has liquid or marketable assets of not more than $1,500.00 in value, or, if a 2-person family, the family has liquid or marketable assets of not more than $2,000.00 in value. The state department shall establish comparable liquid or marketable asset amounts for larger family groups.

This section further provides that certain assets be excluded in determining the value of liquid or marketable assets.

Nothing in this language suggests individuals should retain the stated minimum level of assets. The plain language of the statute merely sets the amount of assets that an individual receiving medical assistance is permitted to own, not required to keep. The language lacks the focus on preserving assets that is readily apparent in the Massachusetts and Illinois statutes. It is much more analogous to the provisions of the Connecticut statute,[2]

---

[2] Conn Gen Stat, § 17-82d provides in pertinent part:

> (c) No person shall be eligible for the state supplement program whose assets as defined by the commissioner exceed sixteen hundred dollars or, if living with a spouse, whose combined assets exceed twenty-four hundred dollars.
>
> (d) No family shall be eligible for the aid to families with dependent children program whose combined assets as defined by the commissioner exceed one thousand dollars.

which, as the Connecticut Supreme Court has held, does not mandate a policy of resource spend down. *Matrazzo, supra,* 225 Conn —.

Because neither federal nor state statutory law requires application of a resource spend-down policy, respondent is free to employ its present policy. While we think resource spend down a more sensible approach to determining eligibility for medical assistance, courts are not at liberty to make policy. That is the Legislature's job. See *Majurin, supra* at 707. We are not presented with an unreasonable or otherwise unlawful policy.

Reversed.

---

Section 17-134e extends these provisions to the medical assistance program.