# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WARE, Minors.

UNPUBLISHED
February 26, 2015

Nos. 322564 & 322566
Oakland Circuit Court
Family Division
LC No. 13-812007-NA

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

In these consolidated appeals, respondents, parents of minors RLW and DJEW, appeal as of right from the order of the family division of the circuit court assuming jurisdiction over the children, and terminating her parental rights to them. In Docket No. 322564, respondent-mother challenges the trial court's assumption of jurisdiction, and also its findings concerning statutory termination factors and the children's best interests. Because of the stringent standard of review applicable to these cases, we affirm the order terminating respondent-mother's rights. In Docket No. 322566, respondent-father challenges only the best-interest determination. In that appeal we vacate the trial court's order terminating respondent-father's rights and remand for a new best interest determination consistent with this opinion. We retain jurisdiction in Docket No. 322566.

## I. FACTS

In the mid-2000s, both respondents were drug addicts. During that time period, both also had their rights to children with different partners terminated. However, unlike most every other parental termination case that makes it to this Court, respondents actually turned their lives around. Respondents married, and beginning in 2010, both discontinued use of any illegal drugs, and as far as the record shows, have remained drug-free ever since. Respondent-father, a military veteran, obtained full-time employment as a truck driver. He held that position through the end of the best interest hearing. During most of this employment he worked out of state during the work week, but prior to the best interest hearing his work shifted to local travel. Respondent mother stayed at home in the house they owned together.

In July 2011 RLW was born. Because of the past terminations, the Department of Human Services (DHS) tested RLW and investigated respondents' home; both were found clean. Just over a year later, in August 2012, DJEW was born. Again, DHS tested the newborn, and there was no evidence of drugs. Respondents' home was inspected and once again found appropriate. During this time period respondents also purchased a new, larger home in the same

-1-

community in which their original home was located. They always made timely payments and the house has always been clean and appropriate.

Despite all this success, in 2013 DHS became involved with respondents when RLW was brought by respondent-mother to an urgent care facility with a lip laceration that required three stitches to repair. Respondent-mother admitted causing the injury, which she indicated occurred when she stepped on a light plastic toy, turned and threw it in anger, and it accidently struck the child. The treating physician did not believe that so deep a laceration could have come about that way, and so, somewhat suspecting abuse, took steps to involve Child Protective Services.

In light of the earlier terminations, upon concluding that respondent-mother had committed abuse resulting in a "serious injury," petitioner, pursuant to MCL 722.638(1)(b)(*i*), filed a petition, and soon thereafter amended it to request termination in the first dispositional order. MCL 722.638(2).

At trial, respondent-mother testified to throwing a light plastic toy in anger and accidentally striking RLW. A second expert joined the treating physician in opining that such a toy could not be thrown hard enough to cause such an injury. A police investigator also testified that respondent-mother had no explanation when asked why she turned and threw the toy rather than just throwing it straight ahead.

A big issue during the trial and best interest hearing was respondent-mother's family, in particular her mother and brother. The trial court accurately described these family members as "toxic." For example, a police investigator reported that he found respondent-mother having temporarily moved her family into her mother's home while the family home was undergoing renovations, but that the mother's home was "one of the worst places" he had even seen, describing carpeting that appeared to be "crawling," which he likened to a pet's litter box. Additionally, while respondent-mother and the children were temporarily residing with her mother, the police were summoned to that location over an incident of domestic violence between the mother and respondent-mother's brother.

Various witness and documentary evidence indicated that respondent-mother had problems with anger management and impulse control, which her participation in all available services failed to alleviate. Also in evidence was that the children had suffered from scabies, a skin condition associated with unclean environments. But, as noted, the trial court found that the home environment was always clean and appropriate.

The trial court concluded that its jurisdiction was proper, and that the evidence established that termination was warranted under several statutory criteria. The court thereafter held a separate proceeding to decide the question of the children's best interests.

That proceeding brought to light that respondent-mother had recently spent some time in jail (for driving while license suspended), that upon returning home she became enraged at the condition of the household (caused by her brother who did not live there), that this escalated to a domestic violence incident with her brother over which the police were called, and that several hours later respondent-mother attempted suicide.

In addition, the foster-care worker testified about more insignificant incidents. For example, she testified that respondent-mother had at times shown impatience with the foster-care mother, disapproved of the younger child's having a ponytail and so "snatched the ponytail out and ripped some hair out with it," and had brought a dog to visitations despite being asked not to. The children were otherwise thriving in foster care. The foster-care worker opined that the continuation of such incidents illustrated respondent-mother's failure to benefit from services, and recommended termination of her parental rights. A psychologist opined that termination was in the children's best interests, while another expert expressed the opposite view.

It also came to light that respondent-father had received local work from his employer, so he would be at home during the week. Additionally, respondent-father testified that he was willing to divorce respondent-mother if that was what was necessary to keep his children out of the foster care system. He in fact had filed for divorce the day prior to the hearing.

When making its findings on the children's best interests, the trial court focused much of its attention on respondent-mother. It first noted that the home was always clean and appropriate, and that the mother was highly motivated and had a bond with the children. The court also recognized that the two affirmative incidents that involved respondent-mother-RLW's cut lip and a driving while license suspended infraction that resulted in some jail time, would not by themselves require termination. But, those incidents-coupled with her attempted suicide and her continued involvement with her "toxic" mother and brother, were together enough for the court to find it was in the children's best interests if termination occurred.

With respect to respondent-father, the court noted that he had always been employed, had remained clean since 2010, had stayed away from those he used to associate with, and was a "great guy." And, at least initially, the court suggested that it "may be [in] the children's best interest for the court to delay judgment for a short time to determine if Mr. Ware will separate from Ms. Ware, get a local job and secure child care." In the end, however, the court found that immediate termination was in the children's best interests because respondent-father did not "see the risk as to mom" and never took the initiative to keep his family away from respondent-mother's toxic family.

## II. JURISDICTION

Respondent-mother first argues that the trial court erred in exercising jurisdiction over the children.[1] A trial court's findings of fact are reviewed for clear error. MCR 2.613(C). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). When

---

[1] Respondent-mother's challenge to the trial court's decision to exercise jurisdiction is not an untimely collateral attack in the course of appealing a termination decision, because the initial petition, as amended, requested immediate termination, and the first dispositional order in the case both assumed jurisdiction and terminated parental rights. See *In re SLH, AJH, & VAH*, 277 Mich App 662, 668-669; 747 NW2d 547 (2012).

deciding a challenge to a court's assumption of jurisdiction over a minor child, this Court must determine whether any error in the matter "was of such magnitude that, but for it, there was an insufficient basis for the . . . court to assume jurisdiction." *In re Toler*, 193 Mich App 474, 476; 484 NW2d 672 (1992).

A court deciding whether there exists a factual basis for assuming jurisdiction in a child protection case must do so on the basis of the preponderance of the evidence. *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993). According to MCL 712A.2(b)(2), the family division of the circuit court properly exercises jurisdiction over a minor child "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

A preponderance of the evidence supported the trial court's conclusion that the injury to RLW, over which respondent-mother admitted responsibility but offered a potentially unbelievable explanation, coupled with her problem with anger and impulse management, suggested the existence of an unfit home environment by reason of neglect or cruelty. Underscoring this concern is that respondent-mother temporarily moved her family into her own mother's home, which one witness described as unfit for human habitation because of the prevalence of animal smells and feces, and to which the police had been summoned because of domestic violence involving respondent-mother's mother and brother.

For these reasons, and in light of the deference provided to the trial court in making its findings of fact, we conclude that a preponderance of the evidence supported the trial court's assumption of jurisdiction under MCL 712A.2(b)(2).

## III. STATUTORY TERMINATION FACTORS

Respondent-mother argues that the trial court erred in concluding that termination was warranted on several statutory bases.

In order to terminate parental rights, the trial court must find that at least one statutory ground for doing so has been met by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses. *In re Miller*, 433 Mich at 337.

The trial court concluded that the following statutory criteria, set forth in MCL 712A.19b(3), were satisfied:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

\* \* \*

(*l*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of this chapter or a similar law of another state.

In finding the factor under section 19b(3)(b)(*ii*) satisfied, the trial court stated, "I think mother could have prevented the physical injury, . . . or at least the court believes, by clear and convincing evidence, that she caused the physical injury . . . ." The court thus concluded that factor (b)(*ii*) was satisfied for the same reasons that it found 19b(3)(b)(*i*) was satisfied, effectively equating inflicting injury with failure to prevent injury.

However, *In re LaFrance, Minors*, 306 Mich App 713, 725; ___ NW2d ___ (2014), held that "subparagraph (*ii*) is intended to address the parent who, while not the abuser, failed to protect the child from the other parent or nonparent adult who is an abuser." Further, if (b)(*ii*) were satisfied simply by inflicting injury of the sort covered by (b)(*i*), the latter would be swallowed up by the former, rendering some of the statutory language within (b)(*ii*) nugatory or surplusage. See *Tiger Stadium Fan Club, Inc v Governor*, 217 Mich App 439, 457; 553 NW2d 7 (1996).

For these reasons, the trial court erred as a matter of law in finding that subsection (b)(*ii*) was satisfied. However, because only one statutory basis for termination need be established, see *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012), this error was harmless because there is no dispute that both parents had rights to children previously terminated, thus establishing statutory grounds under section 19b(3)(*l*).

Respondent-mother argues that this statutory factor is often applied unfairly. In asserting that this is such a case, respondent-mother points out that she lost parental rights to other children in the past because of a substance-abuse problem, which she has since conquered, and

thus these prior terminations do not bear on this case. Although respondent-mother characterizes this application of factor (*l*) as a violation of substantive due process, she offers little discussion or explanation of this position. Such cursory argument is insufficient to invoke this Court's consideration. See *In re Toler*, 193 Mich App at 477 ("A party may not merely announce his position and leave it to us to discover and rationalize the basis for his claim."); see also *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993) (a party's mere assertion that the party's rights were violated, unaccompanied by record citations, cogent argument, or supporting authority, is insufficient to present an issue for consideration by this Court). See also MCR 7.212(C)(5) and *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995) (this Court is not obliged to entertain arguments that are not germane to the issues set forth in the statement of questions presented).

## IV. BEST INTERESTS

Respondent-mother also argues that the trial court clearly erred in determining that termination of her parental rights was in the children's best interests. See *In re Trejo*, 462 Mich at 356-357. The trial court struggled with this decision, and rightly so. But because the trial court is entitled to such great deference on these mostly factual determinations, and despite the fact that based on what we have reviewed we may have come to a different conclusion had we been sitting as the trial court,[2] we are compelled to affirm.

MCL 712A.19b(5) directs that "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." The best-interest question is decided on the basis of the preponderance of the evidence. *In re Moss*, 301 Mich App 76, 83-90; 836 NW2d 182 (2013).

The trial court's findings concerning the statutory termination factors bear on the question of best interests as well. And the best-interests phase of the trial updated the court on respondent-mother's incarceration, plus a new episode involving domestic violence and an attendant suicide attempt. The foster-care worker detailed several instances of respondent-mother's inappropriate behavior in connection with visiting the children, spoke to her continuing concerns over respondent-mother's failure to benefit from services, assured the court that the children were thriving in foster care, and specifically recommended termination of respondent-mother's parental rights in order to spare the children the "continued risk" of being in her care. The psychologist similarly expressed concern over how respondent-mother's participation in services had failed to alleviate her problems with anger and impulse control, which would leave the children at continued risk of harm if in her care, and opined that termination of respondent-mother's parental rights would be in the children's best interests. There was, however, much positive testimony during the hearing regarding both respondents, their clean home environment, fiscal responsibility, and overall appropriate conduct.

---

[2] And even that reason is not enough to overturn a trial court's decision that has factual support from the record. *Black v Dep't of Social Serv*, 195 Mich App 27, 30; 489 NW2d 493 (1992).

"An appellate court recognizes the jury's and the judge's unique opportunity to observe the witnesses, as well as the factfinder's responsibility to determine the credibility and weight of trial testimony." *Zeeland Farm Servs*, 219 Mich App 190, 195; 555 NW2d 733 (1996). Given the evidence concerning respondent-mother's having lost her parental rights to two children in earlier proceedings, her culpability for inflicting an injury upon RLW, and her continued problems with anger management and impulsivity despite having participated in abundant services, we do not have a definite and firm conviction that the trial court mistakenly concluded that the evidence preponderated such that termination of respondent-mother's parental rights was in the children's best interests. See *In re Miller*, 433 Mich at 337.

Turning to the best interest findings as to respondent-father, we conclude that the trial court's findings were somewhat inconsistent with its ultimate conclusions and the record evidence, and were therefore clearly erroneous. See *Law Offices of Lawrence J Stockler, PC, v Rose*, 174 Mich App 14, 39-40; 436 NW2d 70 (1989). In doing so, we recognize that the trial court sits in a unique position, and that the trial court is much experienced in these matters. But, as we previously noted, the trial court expressed significant reluctance in terminating respondent-father's rights, expressing the view during its best interests findings that it may be in the best interest of the children to give him some time to "find local work," separate from the mother, and find day care. Yet it ultimately chose not to do so, even though respondent-father provided unrefuted testimony that he *was already working a local truck driving position*, testimony the court did not indicate was not credible. Thus, the finding that respondent-father needed time to find local work was inconsistent with this apparently uncontested testimony. Additionally, given the quick nature of these proceedings, we too question whether respondent-father should have been given *some* time to obtain child care services and, if need be, divorce respondent-mother, a process he had initiated just prior to the best interest hearing.

For these reasons, in Docket No. 322566 we vacate the trial court's best interests finding as to respondent-father and remand for it to reconsider this issue (including receiving any new evidence, if necessary) consistent with this opinion, and in accordance with the order accompanying this opinion. We retain jurisdiction in Docket No. 322566. We affirm in Docket No. 322564.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

# Court of Appeals, State of Michigan

# ORDER

In re Ware, Minors.

Docket No.     322564; 322566

LC No.         13-812007-NA

Christopher M. Murray
Presiding Judge

Joel P. Hoekstra

Kurtis T. Wilder
Judges

Pursuant to the opinion issued in this appeal, the trial court's best interest findings in Docket No. 322566 are VACATED and the trial court is directed to make new findings and issue a new order on that issue. The trial court may, in its discretion, receive additional evidence and arguments relevant to this issue. The trial court shall file with this Court its order and any findings, along with any transcript from those proceedings, within 42 days of the issuance of this order. We retain jurisdiction.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

FEB 26 2015
_____
Date

_____
Chief Clerk